**In re Robert DiBERTO, Debtor.**

**Robert DiBERTO, Plaintiff,**

v.

**The MEADOWS AT MADBURY, INC., Defendant.**

**Bankruptcy No. 90–2331–JEY.
Adv. No. 93–1025–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

July 7, 1994.

Franklin Jones, Michael, Jones & Wensley, Rochester, NH, for plaintiff/debtor.

John Malmberg, Orr & Reno, Concord, NH, for defendant Meadows at Madbury, Inc.

Mark H. Gardner, Engel, Gearreald & Gardner, PA, Exeter, NH, for Sable Trust, Bluebird Trust, Argus Trust and M. Frank Douglas.

Geraldine B. Karonis, Manchester, NH, for U.S. trustee.

INDEX

Introduction ................................................. 464–65
Background................................................... 465–66
Appeals .......................................................... 467
 Administrative Appeal ............................... 467
 Motion to Intervene Appeal........................ 467
 Motion to Direct Funds Appeal ................... 467
 Motion for Interpretation Appeal ................ 467
 Motion for Protective Order Appeal ............. 467–69
Recap Re Procedural Posture ......................... 469
The Essential Issue and Dispute .................... 469–70
The Doctrine of Res Judicata ......................... 470–71
Application in Reorganization Cases ............... 471–72
Douglas Entities' Contentions ....................... 472–76
Conclusion.................................................... 476–77.

*MEMORANDUM OPINION*

JAMES E. YACOS, Bankruptcy Judge.

*INTRODUCTION*

In compliance with an Order issued by the United States District Court on October 21, 1993 regarding the captioned bankruptcy and adversary proceeding, this Court held a hearing on November 23, 1993 on an appeal remanded by that Court. The appeal was remanded for consideration of this Court to determine whether the August 6, 1992 Order confirming the chapter 11 plan of reorganization in this case has a *res judicata* effect on the issues raised by the appellants pertaining to the plan. Although the Court heard the parties present on the *res judicata* issue on November 23, the Court was informed at that hearing that there were additional appeals in this proceeding outstanding in the United States District Court relating to the *res judicata* issue. The Court therefore continued the hearing awaiting the District Court's decisions on the outstanding appeals.

On January 20, 1994 the District Court issued its Order remanding two additional appeals so that this Court could consider the *res judicata* effect of the confirmation of the plan on each of the Orders remanded at a single hearing. The Court then scheduled a hearing on the *res judicata* effect of the plan on the remanded matters and heard the parties on January 31, 1994. The Court then took the matter under submission.

The appellants (and movants) with regard to the Orders remanded are Frank Douglas, Bluebird Trust, Sable Trust and Argus Trust, (hereinafter the "Douglas Entities").

After reviewing the entire record in these proceedings, and for the reasons set forth below, the Court finds that the Order Confirming the First Amended Plan Of Reorganization is a final and binding Order pursuant to the provisions set forth in § 1141 of the Bankruptcy Code. Moreover, in my view, the doctrine of *res judicata* bars all

parties from relitigating the issues raised by the appellants regarding the Orders remanded to this Court.

## BACKGROUND

This chapter 11 proceeding was filed on December 3, 1990. The First Amended Plan of Reorganization, Dated August 23, 1991, With March 23, 1992 Modifications filed with this Court on March 23, 1992 (Court Doc. No. 109) was confirmed after a series of hearings by this Court's Order of August 6, 1992 (Court Doc. No. 155). At the confirmation hearing on April 10, 1992, the only remaining issue was the dispute between the debtor and the Douglas Entities. This dispute involved litigation pending in the Strafford County Superior Court[1] which is referred to in the debtor's plan of reorganization as the "Douglas Litigation". The Plan of Reorganization, page 2, paragraph J., defines the Douglas Litigation as follows:

> *Douglas Litigation* shall mean the 6 actions pending in the Strafford County Superior Court which have been consolidated and involve disputes surrounding the severance of the joint venture relationship between Debtor and M. Frank Douglas and various trust entities.

Under the Plan of Reorganization, Article II, the Douglas Entities were designated in Class 5, 6 and 25 as follows:

F. *Class 5*

The allowed secured claim of Bluebird Trust pursuant to Note dated 2/25/86 in the face amount of $233,000 secured by Lee Hill Commercial Land ("Bluebird Trust Lee Hill Mortgage").

\* \* \* \* \* \*

G. *Class 6*

The allowed secured claim of Bluebird Trust pursuant to note dated February 25,

1986 in face amount of $80,000.00 secured by Tamarack Estates Lots ("Bluebird Trust Tamarack Estates Mortgage").

\* \* \* \* \* \*

Z. *Class 25*

The disputed Douglas Litigation claims of M. Frank Douglas, Bluebird Trust, Sable Trust and Argus Trust (excluding the Bluebird Trust claim classified as Class 5, above) ("Douglas Litigation").

First Amended Plan of Reorganization, Court Doc. 109 at pp. 6–7.

Article III of the Plan, pages 9–12, specifies how each of the Douglas Entities claims are to be treated under the Plan:

\* \* \* \* \* \*

> *Class 5* (Bluebird Trust Lee Hill Mortgage) shall retain its mortgage on the Lee Hill Commercial Land and be paid from money which it realizes in liquidating said security interest. The deficiency, if any, shall be treated in the same manner as other unsecured creditors specified below.

> *Class 6* (Bluebird Trust Tamarack Estates Mortgage) is oversecured and a disputed claim. It shall retain its mortgage on the Tamarack Estates Lots and a security interest in the monies paid by Debtor to the Clerk of the Strafford County Superior Court pending resolution of the Douglas Litigation. To the extent the holder is determined after resolution of the Douglas Litigation to have any valid claims, that claim will be paid out of the monies then held by the Clerk of the Strafford County Superior Court and/or realized from liquidating its mortgage security interest.

\* \* \* \* \* \*

> *Class 25* (Douglas Litigation) is disputed and the subject of litigation pending in the Strafford County Superior Court. This litigation shall be removed to this Court,

---

**1.** The cases are as follows: *Robert L. DiBerto, et al. v. Frank Douglas and The Sable Trust*, No. 88–E–223; *Bluebird Trust v. Robert L. DiBerto, et al.*, No. 88–E–529; *Robert L. DiBerto, et al. v. M. Frank Douglas, et al.*, No. 88–E–277; *Robert L. DiBerto, et al. v. M. Frank Douglas, et al.*, No. 89–

E–026; *Bluebird Trust v. Robert L. DiBerto*, et al., No. 89–C–206; *The Sable Trust v. Robert L. DiBerto, et al., Argus Trust v. Robert L. DiBerto, et al., Bluebird Trust v. Robert L. DiBerto, et al.*, and *Bluebird Trust v. Robert L. DiBerto, et al.*, No. 90–C–215.

and the amount determined to be owing, if any, shall be paid out of the monies held by the Strafford County Superior Court. Pending resolution of this claim, it shall retain its security interest in the monies paid by the Debtor to the Clerk of the Strafford County Superior Court. To the extent the holder is determined to have any valid claim, that claim will be paid from the monies held by the Clerk of the Strafford County Superior Court. The $3,000,000.00 attachment obtained November 30, 1990 immediately prior to the bankruptcy filing shall be avoided and discharged upon confirmation of this Plan.

The Disclosure Statement filed with regard to the Plan of Reorganization on August 26, 1991 (Court Doc. No. 59) stated at page 8 thereof the following:

> The Douglas Litigation will be completed, and to the extent that Mr. Douglas is determined to have any valid claim, that claim will be paid from the monies held by the Clerk of the Strafford County Superior Court.

Notwithstanding this recitation in the August 1991 Disclosure Statement, and in the Plan of Reorganization in both its original and final forms, the Douglas Entities in a number of objections filed with regard to the both the Disclosure Statement and the Plan prior to confirmation of the Plan in August of 1992 did not object to the Plan provisions regarding the treatment of the Douglas Litigation claims but instead objected on various other grounds, including primarily the contention that the debtor was unfairly providing that only six of his 24 properties would be mortgaged to support the promised distribution to general creditors under the plan and that all 24 properties should be subjected to that mortgage to be issued by the reorganized

debtor.[2] See Objections filed by Douglas Entities, Court Doc. Nos. 69 (10/28/91); 70 (10/29/91); 97 (1/9/92); 120 (4/20/92); and 122 (4/28/92).

At the final confirmation hearing on July 27, 1992 the debtor and the Douglas Entities reached an agreement and the Douglas Entities' objections were withdrawn. As stated in the Order confirming the plan, in paragraph 25, page 3, "The objections of Frank Douglas, Sable Trust, Argus Trust and Bluebird Trust were withdrawn in open court on July 27, 1992." As to the Douglas Litigation, the confirming Order provided in paragraph 1(a), page 3, that "The Douglas Litigation shall not be removed to this Court as provided for in Article III.Z. of the Plan, but rather shall proceed and be determined in the Strafford County Superior Court."[3] The Order confirming the Plan was never appealed and became a final Order.

Notwithstanding the foregoing, the Douglas Entities have continuously attempted to litigate issues provided for in the plan and confirming order in this Court. The Court repeatedly informed the parties at the various hearings on these issues that it was not the function of this Court to relitigate disputes that were resolved in the plan of reorganization.[4] Time after time the Court reminded the attorneys that the plan and confirmation order were binding. A total of six appeals in this case have been filed to date. Two appeals have been dismissed. One appeal is still pending in the United States District Court. Three appeals were remanded to this Court and are the subject of this opinion. The appeals filed and their dispositions are discussed in detail below.

---

2. The record establishes that the "24 properties" referred to throughout these proceedings included the 4 properties which were the subject of the Douglas Litigation in the Strafford County Superior Court. See footnote 10, infra for listing of the four properties.

3. This change was not initiated by the parties but stemmed from this Court's expressed reluctance to undertake that litigation in view of its then pressing caseload of debtors requiring its time in

reorganization proceedings. *See Transcripts*, April 10, 1992, pp. 46–47; July 27, 1992, pp. 10–12, June 7, 1993, pp. 34–35.

4. As the Court noted at a November 23, 1992 hearing on a previous motion by the Douglas Entities "[T]he [reorganization] process is designed to resolve disputes, not create them." Transcript, p. 13.

## APPEALS

### Administrative Expense Appeal

On August 14, 1992 the Douglas Entities filed a Motion for Allowance of Administrative Expenses, (Court Doc. No. 160). In their motion they requested $29,987.34 in administrative expenses due to the fact that they "substantially contributed to Debtor's successful reorganization". (Court Doc. No. 160 at p. 3, ¶ A). This motion was heard on October 1, 1992 and taken under advisement with further briefing due by the parties. The Court entered its Memorandum Opinion (Court Doc. No. 245) and Order (Court Doc. No. 246) on October 14, 1993 denying the Motion for Allowance of Administrative Expenses. On October 25, 1993 the Douglas Entities filed an appeal of the October 14, 1993 Order denying administrative expenses. The United States District Court assigned case number C–93–652–JD to the administrative appeal and that appeal is presently pending in the United States District Court.

### Motion to Intervene Appeal

### Motion to Direct Funds Appeal

On February 12, 1993 the debtor filed a Complaint For Turnover of Property against the Meadows at Madbury, Inc. (See Adversary Proceeding No. 93–1025). The debtor's complaint requested that the Meadows at Madbury, Inc. satisfy a claim previously allowed and that they turn over proceeds from an escrow account which was created during a real estate sale between the debtor and the defendant. The property in dispute in this adversary proceeding was involved in the Douglas litigation.

The Douglas Entities moved to intervene in this adversary proceeding by filing a Motion to Intervene on March 29, 1993 (Court Doc. No. 7) contending they would own the proceeds held in escrow if the state court determined that they were the rightful own-ers. Also filed in this adversary proceeding on March 29, 1993, was the Douglas Entities' Motion to Direct the Application of the Escrowed Funds (Court Doc. No. 9). The Court heard these matters on April 8, 1993 and subsequently denied the Douglas Entities' Motion to Direct Application of Escrowed Funds (See Order dated April 8, 1993, Court Doc. No. 13) and denied their Motion to Intervene (See Order dated April 13, 1994, Court Doc. No. 14). Both those Orders were appealed by the Douglas Entities on April 19, 1993 (Court Doc. No. 21).

By Order of the United States District Court, Joseph A. DiClerico, Jr., Chief Judge, (Civil No. 93–303–JD), (Court Doc. No. 41) the appeal regarding the denial of the motion to direct funds was remanded and the appeal denying the Motion to Intervene was dismissed as moot.[5] Judge DiClerico states in his Order that the matter is remanded to this Court "so it can determine whether DiBerto is correct in asserting the amended plan has a *res judicata* effect on the issues the Douglas Entities now assert."

### Motion for Interpretation and Clarification Appeal

### Motion for Protective Order Appeal

On April 5, 1993 the Douglas Entities filed a Motion for Interpretation and Clarification of Debtor's Plan of Reorganization (Court Doc. No. 195). In the Debtor's objection to the motion for interpretation and clarification, the debtor requested a protective order (Court Doc. No. 200). A hearing was held on June 7, 1993 on that motion.[6] At that hearing the Court ruled that the motion for interpretation and clarification was denied. The Court also granted at that hearing the request by the debtor for a protective order to prevent any attempt to reach the properties in question in the Strafford County litigation and to prevent any action in that court which would contradict the effect of the plan. The

---

**5.** This appeal was dismissed due to an agreement later reached by the parties in a "Stipulation and Order on Complaint for Turnover" in the adversary proceeding approved by this Court on July 28, 1993 (Court Doc. No. 40).

**6.** To clarify the record, the Douglas Entities had previously filed a Motion for Interpretation and Enforcement of Plan (Court Doc. No. 179), relat-ing to another provision in the plan dealing with treatment of Class 26 unsecured creditors, which was heard by this Court on November 23, 1992. This Court denied that motion and entered its Memorandum Opinion and Order reflecting that ruling on December 8, 1992. (Court Doc. No. 190). That Order was not appealed.

Court instructed the attorney for the debtor to submit a written order on both these matters.[7] A form of order was submitted by the attorney for the debtor regarding the protective order and was entered by this Court on June 15, 1993 (Court Doc. No. 203). No written order was submitted or entered denying the Motion for Interpretation and Clarification. Despite that fact, on June 17, 1993 a Notice of Appeal from an Order on a Motion for Interpretation and Clarification was filed by the Douglas Entities of the "final order issued from the bench" (Notice of Appeal, Court Doc. No. 204). On June 24, 1993, a Notice of Appeal from the Protective Order was filed by the Douglas Entities regarding the Protective Order entered June 15, 1993 (Notice of Appeal, Court Doc. No. 206).

The remand and the foregoing review of the record has apprised this Court of the startling procedural fact that the Douglas Entities purported to take an appeal from a nonexistent order denying the motion for interpretation and clarification. The First Circuit has repeatedly ruled that there must be an actual written order or judgment to support an appeal. *Fiore v. Washington County Community Mental Health Center,* 960 F.2d 229 (1st Cir.1992); *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir. 1982). There simply was never any written order entered disposing of the aforesaid mo-

tion. However, since the Court entered its detailed findings and conclusions in its bench ruling, at the conclusion of the bench ruling on June 7, 1993, all that was left was the ministerial act of incorporating those findings and conclusions into a written order, which did not occur due to some confusion as to the court's instructions. See footnote 7 above.

To eliminate any further complexities and unnecessary additional issues in this case, the Court will enter separately this date a written order denying the motion for interpretation and clarification re plan of organization, nunc pro tunc to the June 7, 1993 bench ruling date, incorporating its findings and conclusions as already stated in the transcript of that hearing, with minor changes to accommodate the context of a formal written order. The Douglas Entities can then properly perfect an appeal from that written order by an appropriate notice of appeal within the 10 days permitted by the rule as they may be advised.[8]

Familiarity with the findings and conclusions set forth in the separate *written* order *now* entered denying the motion for interpretation and clarification is presumed and those findings and conclusions are incorporated by reference in this opinion.

On June 24, 1993 a Motion for Clarification (Court Doc. No. 208) of the Protective Order was filed by Douglas Entities.[9] On the same

7. "Mr. Jones will be requested to submit an order on—granting the protective order under that ruling, and reflecting the fact that the Court has denied the motion for interpretation and clarification of the plan to the contrary requested by the movants here." [See Transcript of hearing June 7, 1993 at p. 60.]

8. No prejudice to either party is perceived by this nunc pro tunc entry of the written order since the appeal time will run from the date of the actual present entry of the written order and the debtor obviously was on notice throughout that the Douglas Entities would appeal such an order. If the procedural issue had been raised by the debtor before the District Court judge the only result would have been to dismiss the appeal which would have led to the entry of a written order by this Court based on its June 7, 1993 bench ruling. That then would have started the running of a 10–day appeal period from the actual entry of the written order. That is all that is being accomplished by the present actions of this Court.

9. On August 2, 1993, A Motion for An Extension of Time for Appeal (Court Doc. No. 224) was filed by the Douglas Entities regarding the June 15, 1993 protective Order. This is the sixth appeal filed by the parties. Although an appeal was filed on June 24, 1993 to that Order, because the Douglas Entities later asked to clarify that Order, they believed a new appeal period would run. At a hearing on this matter on August 5, 1993 this Court stated "In my circumstances, this particular factual situation is unique. It's also unique from the standpoint that the matter—the transaction in question is already before the court on another appeal, that is the District Court. And it would seem to me to be inappropriate to not permit this one to be as a part of the record before that court. For all those reasons, the motion to extend will be granted, and the notice of appeal not filed can be filed." On August 5, 1993 the Court entered an Order granting the extension. (Court Doc. No. 229) A new notice of appeal to the June 15, 1993 protective order was then filed by the Douglas Entities (Court Doc. No. 231). To keep up with the spirit

date the Douglas Entities filed a Motion to Partially Stay the Protective Order (Court Doc. No. 208). These motions were heard by this Court on July 1, 1993 and an Order was entered (Court Doc. No. 216) denying the Motion to Clarify the Protective Order. A separate Order was entered on the Motion to Partially Stay the Protective Order (Court Doc. No. 217). These Orders were not appealed.

On January 20, 1994 (Court Doc. No. 254) the U.S. District Court, Joseph A. DiClerico, Jr., Chief Judge, remanded the Motion for Interpretation and Clarification Appeal and the Motion for Protective Order Appeal to this Court for the "opportunity to consider the *res judicata* effect of the confirmation plan on each of the relevant orders at a single hearing", without commenting on the merits of the appeals.

### RECAP RE PROCEDURAL POSTURE

The foregoing recitation of the procedural context of the matters remanded to this Court has been set forth in some detail to eliminate unnecessary confusion each time this case record is reviewed, due to the plethora of various pleadings, orders, and appeals presented by the record of this case. It is also essential for narrowing the focus to only those matters that have been remanded to this Court by the orders of the District Judge.

For ease of reference, therefore, a recapitulation of the orders and matter remanded to this Court by the District Court's orders are as follows:

1. *"Order Denying Motion to Direct Application of Funds"*, entered April 8, 1993 in Adversary Proceeding No. 93–1025. (Court Doc. No. 13).

2. *"Order on Motion for Interpretation and Clarification Re Plan of Reorganization"*, entered July 7, 1994, nunc pro tunc to June 7, 1993 (Court Document No. 256).

3. *"Protective Order Limiting Further State Court Action"*, entered June 15, 1993 (Court Document No. 203).

As indicated above, the District Court has remanded these three orders to this Court for further consideration as to whether the confirmation of the plan of reorganization in this case had *res judicata* effect precluding the relief requested by the Douglas Entities in each of the motions which were dealt with by the orders remanded. That consideration was to be in terms of the existing record that led to the August 1992 confirmation of the plan, as I understand the remand, since to do otherwise and reopen the record for new evidence would constitute a *de facto* rehearing of the plan of reorganization. That would constitute a victory for the appellants on the merits of their contention that the plan is ambiguous, i.e., one of the key issues on the appeal which clearly was not decided by the District Court in its limited remand orders.

### THE ESSENTIAL ISSUE AND DISPUTE

There is no question that at the time of the bankruptcy filing the record title to each of the properties involved in the Strafford County litigation was in the debtor as trustee of various trusts.[10] There was however a sharp conflict pre-bankruptcy as to whether the debtor also held the beneficial interests in the trusts, or whether the Douglas Entities were the true owners of those beneficial

of this case, and to further complicate an already overly-complicated record, the debtor filed a Notice of Appeal (Court Doc. No. 233) of the Order granting an extension of time to file an appeal. On March 14, 1994, Judge DiClerico dismissed this appeal due to that fact that Court had remanded the original appeal of the protective order back to this Court. (Court Doc. No. 255).

10. The properties involved in that lawsuit at the time of the bankruptcy filing, which are relevant for present purposes, were comprised of the following: (1) land, 13 acres, Tuttle Rd., Lee, N.H., record title in debtor as trustee of Acorn Realty Trust; (2) land, 44 acres, Province Rd., Route 126, Barrington, N.H., record title in debtor as trustee of Acorn Realty Trust; (3) house and 70 acres of land, Route 108, Madbury, N.H., record title in debtor as trustee for Walnut Realty Trust; and (4) house and 180 acres of land, Route 108, Madbury, N.H., record title in debtor as trustee for Acorn Realty Trust. See *Bankruptcy Schedules* filed January 17, 1991, Sch. B–1, Court Doc. No. 17; *Motion and Memorandum Re Interpretation and Clarification*, filed April 5, 1993 and June 7, 1993, Court Doc. Nos. 195 and 202.

interests.[11] The debtor in his bankruptcy schedules claimed *both* the legal and beneficial interests in the properties involved. See Schedule B–1, "Attachment Real Property", Court Doc. No. 17. This dispute, arising from conflicting views as to the effects of the split between the parties as to their former joint venture relationship, was at the heart of the pre-bankruptcy litigation in the Strafford County Court, and to a large extent precipitated the bankruptcy filing.

In a nutshell, the essential dispute *now* before *this* Court between these parties boils down to the contention by the Douglas Entities that the provision of the plan and confirming order permitting the Strafford County litigation to go forward necessarily included their right to force the debtor to convey title of the properties involved to themselves if they prevailed in the litigation. They also contend that this right supported their attempt to have the escrowed funds turned over by the defendant in Adversary Proceeding No. 93–1025 in the event that they ultimately prevailed in the state court litigation.[12]

The debtor contends, to the contrary, that explicit plan provisions limited the rights of the Douglas Entities regarding these specific properties to recovery against escrowed funds held in the registry of the state court, under the pending litigation; that other provisions of the plan encumbered those properties to serve as a guarantee of the proposed plan payments to the general unsecured creditors of the debtor; and that the plan disposed of all assets of the debtor without limitation and bound the Douglas Entities to the treatment provided by the plan as confirmed without appeal or objection by the Douglas Entities. The debtor argues that the resolution encompassed in the final version of the plan and confirming order was in effect an overall settlement and compromise negotiated between these warring parties and was understood at the time to be such and should not now be undone by the post-confirmation request for relief by the Douglas Entities.

The Court has previously set forth in some detail in the remanded orders its interpretation of the key pertinent provisions of the plan and confirming order relevant to the questions presented. The further hearings on remand have not established that any other provisions of the plan and confirming order are pertinent to the inquiry and therefore the Court in this opinion simply incorporates by reference those prior findings. The remaining issue for decision is whether under principles of *res judicata* law those provisions of the plan and confirming order should be deemed to be preclusive of the post-confirmation relief requested by the Douglas Entities covered by the remanded orders.

## THE DOCTRINE OF RES JUDICATA

The elements involved in the application of res judicata have been set forth by the Court of Appeals of the First Circuit in a series of opinions which break the doctrine down into "claim preclusion" and "issue preclusion." The former is the more common conception of the doctrine while the latter is often referred to as "collateral estoppel" as well. In *In re Belmont Realty Corp.*, 11 F.3d 1092, 1097 (1st Cir.1993), the Court stated:

> In *Dennis v. R.I. Hospital Trust Nat. Bank*, 744 F.2d 893, 898 (1st Cir.1984), we explained that the "claim preclusion" aspect of res judicata bars relitigation of any claim "that was, or *might have been*, raised in respect to the subject matter of the prior litigation." *Id.* (emphasis in original) (citations omitted). "Issue preclusion" or "collateral estoppel" on the other hand, prohibits relitigation "of factual or legal issue that was *actually* decided in previous litigation 'between the parties whether on the same or on a different claim'" *Id.* (emphasis in the original) (quoting Restatement, Second Judgments § 27 (1982)).

---

**11.** The Douglas Entities also challenged whether the debtor even held "legal title" by virtue of various alleged wrongful and fraudulent actions on his part.

**12.** The adversary proceeding involved certain monies escrowed at the time of a pre-bankruptcy sale by the debtor of some 20 acres of a 200–acre parcel of land which is listed in footnote 10 above as the 180–acre parcel on Route 108 in Madbury, N.H.

We emphasized that "[a]n issue may be "actually" decided even when it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached." *Id.* (emphasis in original). See Wright, Miller & Cooper, [Federal Practice and Procedural: Jurisdiction § 4402 (1981)].

See also *In Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993) ("... essential elements of res judicata, or claim preclusion, are (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits ..."); *DeCosta v. Viacom Intern., Inc.,* 981 F.2d 602, 605 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993) ("... traditional legal doctrine of "collateral estoppel" bars relitigation of any issue that (1) a party had a full and fair opportunity to litigate in an earlier action, (2) was finally decided in that action, (3) against that party, and (4) was essential to the earlier judgment ..."). The question raised in the present case is *res judicata* in the "claim preclusion" sense.[13]

### APPLICATION IN REORGANIZATION CASES

Under a confirmed reorganization plan former legal relationships between a debtor and its creditors are extinguished and replaced by new commitments binding in law. *In re BankEast, Inc.,* 142 B.R. 12 (Bankr. D.N.H.1992) ("... these parties have struck a deal in the confirmed plan under which they have enforceable contractual arrangements"); see also *In re Orange Tree Assoc., Ltd.,* 961 F.2d 1445, 1448 (9th Cir.1992); *In re Valley Park Group, Inc.,* 96 B.R. 16, 24 (Bankr.N.D.N.Y.1989). Section 1141 of the Bankruptcy Code binds creditors and other parties to the terms of the plan even if the party has not accepted the plan, *Paul v. Monts,* 906 F.2d 1468 (10th Cir.1990); *In re White Farm Equipment Co.,* 38 B.R. 718 (N.D. Ohio 1984), or has claims which are impaired, *In re General Coffee, Corp.,* 85 B.R. 905 (Bankr.S.D.Fla.1988), or when the creditor receives less under the plan than it otherwise might arguably be legally entitled to receive. *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546 (Bankr.E.D.Mich.1984).[14]

With that background and considering the multiple party context, i.e., a reorganization under the bankruptcy laws, the courts have held that confirmation of a plan of reorganization is essentially equivalent to a final judgment with regard to the claims of creditors. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Heritage Hotel Partnership I,* 160 B.R. 374 (9th Cir. BAP 1993); *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458 (6th Cir.1991); *Bizzell v. Hemingway,* 548 F.2d 505 (4th Cir.1977).

The Supreme Court has specifically held that the doctrine of *res judicata* not only bars later proceedings on issues that were actually raised during the confirmation process but also bars actions on issues that should have been or could have been raised during the confirmation process. *Stoll,* 305

---

**13.** While "issue preclusion" also could be involved the broader doctrine of "claim preclusion" is all that needs to be addressed here.

**14.** Section 1141 of the Bankruptcy Code provides in part relative to the present case the following:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

The remaining subsection (d) of § 1141 deals with exceptions to the discharge of a debtor not pertinent here.

U.S. at 172, 59 S.Ct. at 137–38; *Eubanks v. F.D.I.C.,* 977 F.2d 166 (5th Cir.1992). See also, *Matter of Howe,* 913 F.2d 1138 (5th Cir.1990); *Sanders Confectionery Products Inc. v. Heller Financial, Inc.,* 973 F.2d 474 (6th Cir.1992); *Barnett v. Stern,* 909 F.2d 973 (7th Cir.1990).

■ In sum, when a creditor has notice and a full opportunity to make its views and objections known during the reorganization and confirmation process, the creditor is bound by the terms of the reorganization plan upon the entry of the confirmation order. *Matter of Baudoin,* 981 F.2d 736 (5th Cir.1993); *Sure–Snap Corp. v. State Street Bank and Trust, Co.,* 948 F.2d 869 (2nd Cir.1991) (technicalities with regard to explicit pleadings and parties' status will not relieve a creditor from the obligation to take a direct appeal from the confirmation order to preclude *res judicata* effect); *The Matter of Howe,* 913 F.2d at 1146–47. Cf., *In re Auto West, Inc.,* 43 B.R. 761 (S.D.N.Y.1984) (*res judicata* does not bar action against a creditor not mentioned or treated in reorganization plan).

■ Application of the doctrine of *res judicata* to the confirmation order supports the strong policy of finality in the reorganization process. *In re Szostek,* 886 F.2d 1405 (3rd Cir.1989) (after a chapter 13 plan is confirmed the policy favoring finality of confirmation is stronger than the court's obligation to verify the plan's compliance with the Code); *In re Blanton Smith Corp,* 81 B.R. 440 (M.D.Tenn.1987) ("the success of a corporate reorganization demands finality to the order of confirmation ... [t]he execution of new contracts and loan agreements requires certainty for all parties involved").

The courts have particularly taken note of whether granting the post-confirmation relief requested by a party to the reorganization process will have the effect of disrupting or unraveling the rights accorded to other parties by the confirmed plan. *In re Public Serv. Co. of N.H.,* 963 F.2d 469, 474 (1st Cir.1992) *cert. denied* — U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992); *Holstein v. Brill,* 987 F.2d 1268 (7th Cir.1993); *In re Block Shim Development Company–Irving,* 939 F.2d 289 (5th Cir.1991); *In re Christo-*

*pher,* 148 B.R. 832, 837 (Bankr.N.D.Tex.1992) (there is a strong policy favoring enforcement of the plan of reorganization because too many rights of too many interests have relied on the finality of the confirmation order).

Finally, it has been squarely held that questions of whether the reorganization court had subject matter jurisdiction to dispose of certain claims or property are lost and can not serve to undo a confirmed reorganization plan in the absence of a direct appeal. *Stoll,* 305 U.S. at 172, 59 S.Ct. at 137; *Republic Supply v. Shoaf,* 815 F.2d 1046, 1053 (5th Cir.1987); *In re Sanders,* 81 B.R. 496, 499 (Bankr.W.D.Ark.1987) ("So long as a court is competent to preside over the matters at issue, even an erroneous determination as to the extent of the court's jurisdiction is res judicata and not subject to collateral attack."); Cf. also *In re Robert Farms, Inc.,* 652 F.2d 793, 798 (9th Cir.1981).

### DOUGLAS ENTITIES' CONTENTIONS

■ The Douglas Entities first contend that an order confirming a chapter 11 plan of reorganization does not have *res judicata* effect because reorganization is an ongoing process in which modification of the plan can occur. They cite in that regard the following cases decided under the prior Bankruptcy Act. *Wright v. City National Bank & Trust Company,* 104 F.2d 285 (6th Cir.1939); *In re Deep Rock Oil Corp.,* 113 F.2d 266 (10th Cir.1940), *cert. denied* 311 U.S. 699, 61 S.Ct. 138, 85 L.Ed. 453 (1940). This contention however has not been followed under the present Bankruptcy Code, enacted in 1978, since the Court's powers to modify a confirmed plan of reorganization were vastly different under the prior Act as compared to the present Code. See, e.g., *Matter of GEX Kentucky, Inc.,* 100 B.R. 887, 887–89 (Bankr. N.D. Ohio 1988); *In re Oliver Wendell Horne, Jr.,* 99 B.R. 132, 134–35 (Bankr. M.D.Ga.1989); *In re Blanton Smith Corp.,* 81 B.R. 440, 442–43 (M.D.Tenn.1987).

In the *Horne* case, the Court rejected on *res judicata* grounds an attempt by a creditor to force a modification of a confirmed reorganization plan, to change and increase

the secured creditor's treatment under the plan, from the amount specified in the plan as its secured claim, to the increased amount that was actually achieved at a post-confirmation sale by the reorganized debtor. The Court commented:

> As clearly provided by § 1127(b) of the Bankruptcy Code, only a proponent of a plan or the reorganized debtor may modify a plan after confirmation. GDA fails on both requirements in that GDA is neither the proponent of the plan nor the reorganized debtor.

99 B.R. at 134–135.

The Court in *GEX Kentucky*, supra, considered the *Wright* decision and found it unpersuasive in view of the Supreme Court's almost contemporaneous decision to the contrary, and commented:

> The narrow issue presented is whether this court's order confirming the second amended plan of reorganization in GEX Kentucky, Inc. is equivalent to a judgment and, as such, *res judicata*, as to the issues resolved thereby. The Sixth Circuit in an early decision stated that: "The order confirming a plan of reorganization is not the equivalent of a judgment and is no more than a step in the administration of the debtor's estate and does not terminate jurisdiction of the court." *Wright v. City National Bank and Trust Company*, 104 F.2d 285, 287 (6th Cir.1939). The Supreme Court, however, in 1938 had previously held an order confirming a plan of reorganization is *res judicata*, *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), reh'g denied, 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938), and as such "any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred...." *Miller v. Meinhard–Commercial Corporation*, 462 F.2d 358, 360 (5th Cir.1972) (citations omitted). See also, *In re Higbee Company*, 164 F.2d 426 (6th Cir.1947), *cert. denied*, 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142 (1948); *In re Blanton Smith Corporation*, 81 B.R. 440 (M.D.Tenn.1987).

As further support for finding an order of confirmation to be *res judicata*, 11 U.S.C. § 1141(a) provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, and entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

> Accordingly, this court finds, based upon the foregoing authority, that generally an order confirming a plan of reorganization is *res judicata*.

100 B.R. at 888–89.

The Douglas Entities fasten upon the word "generally" in the cited passage from the *GEX Kentucky* decision and argue that "generally" implies "not always". That of course is true but the Douglas Entities have failed to cite, nor has this Court been able to find, any decision under the present Bankruptcy Code which actually denied *res judicata* effect to a confirmed plan of reorganization, with regard to creditors' claims specifically treated under the plan, in any factual situation remotely comparable to the one before this Court.

The decision in *Matter of Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bankr. W.D.Mich.1982), involved a confirmed plan providing for two payments to general creditors over a span of less than a year which was aborted when the second payment could not be made. The case was converted to chapter 7 and the trustee in bankruptcy was proceeding with actions to recover voidable preferences from certain creditors who argued that all claims by and against the debtor had been "settled" in the confirmed plan and that in any event *res judicata* would preclude the trustee from proceeding. The key fact in that case, not present here, was that the plan specifically provided and gave the creditors through their Committee a

right to force conversion of the case to chapter 7 if the second payment was not made. As the Court in *Silver Mill* noted: "By agreeing that the plan would convert to a chapter 7 upon default, the parties implicitly agreed that a subsequent chapter 7 trustee would be able to recoup any preferential transfers." 23 B.R. at 183. The Court further noted: "Confirmation of a plan that provides upon default for conversion to chapter 7 is not *res judicata* on all issues until the plan is fully consummated." *Id.*[15]

The further discussion in the *Silver Mill* case concerning "settlement" and the effect of failure to fully consummate a plan on the "settlement" is unnecessary to the decision in that case, and in any event is contrary to the well-established principle that a confirmed plan of reorganization under chapter 11 of the Bankruptcy Code establishes new contractual legal rights upon which the parties may sue or be sued, as developed earlier in this opinion. That portion of the discussion in the *Silver Mill* opinion also neglects to consider the effect of § 1141 of the Bankruptcy Code.

Recognizing that they cannot cite any case decision under the Bankruptcy Code which squarely holds that a confirmed plan of reorganization is not *res judicata* as to all claims of creditors which were raised, or which could have been raised during the confirmation process, the Douglas Entities cite the decision in *Purter v. Heckler*, 771 F.2d 682 (3rd Cir.1985), for the proposition "by analogy only" that the application of *res judicata* can be quite flexible and more lenient depending on the equities of the case involved. However, the *Purter* case involved an appeal from a decision rejecting a third claim for social security disability benefits by a claimant whose alcoholism had been involved in the earlier rejected claims, but who now contended that his third claim was bottomed completely on alcoholism and therefore was a new claim not barred by *res judicata*. As the decision of the Court of Appeals in *Purt-*

er amply demonstrates, the Court was applying *res judicata* principles entirely differently than it would in the "prior judicial judgment" context in view of various considerations regarding how such claims are processed administratively and also considering the broad latitude the social security officials had to relieve claimants from prior determinations under their own regulations. *Id.* at 690–691.

The Douglas Entities refer to of the Restatement of the Law Second, *Judgments,* § 73 (1988) which provides:

> Subject to the limitations stated in § 74, a judgment may be set aside or modified if: (1) The judgment was subject to modification by its own terms or by applicable law, and events have occurred subsequent to the judgment that warrant modification of the contemplated kind; or (2) There has been such a substantial change in the circumstances that given continued effect to the judgment is unjust.

They argue this supports the proposition that the Court has considerable leeway in the application of *res judicata* in its cases. The Restatement however does not clearly take into account the multi-party context involved in bankruptcy reorganization proceedings. and I do not find it persuasive in that context.[16] Moreover, § 1127 of the Bankruptcy Code specifically permits modification of a plan of reorganization only when the *proponent or reorganized debtor* requests the same. The Douglas Entities are neither.

The Douglas Entities also contend that "Because the bankruptcy court declined jurisdiction over the 'Douglas Litigation' the matter as to legal title to the disputed properties and related monetary matters is yet to be determined". *Response to Supplemental Objection,* p. 5 (Court Doc. No. 45, AP 93–1025). The Bankruptcy Court however did *not* "decline jurisdiction" when it allowed the legal issues and rights of the Douglas Enti-

---

15. In the DiBerto case before this Court the plan provides that upon default that the unsecured creditors through their representative can proceed to foreclose on the real properties securing the nonrecourse note issued by the reorganized debtor.

16. I note that § 74 of the Restatement states that relief from a judgment should be denied on various grounds, including when "Granting the relief will inequitably disturb an interest on reliance of the judgment." See *Hyland v. Kirkman*, 204 N.J.Super. 345, 498 A.2d 1278, 1295 (Ch.1985).

ties to be resolved in the state court but limited their recovery to the funds in the registry of that Court. The Court *exercised* its jurisdiction to affect some of the rights involved but left the remaining rights to be determined in the state court.

▮ The contention by the Douglas Entities that where a debtor holds property in trust for the benefit of others the property is "not part of the estate" is correct as far as it goes. Section 541(d) of the Code so provides. But the statute excludes from the estate "any equitable interest in such property that the debtor does not hold." Where that fact itself is in dispute, as when the equitable interest is subject to unresolved conflicting claims of ownership, the Court clearly has jurisdiction to determine what is and what is not property of the estate. See 28 U.S.C. §§ 157, 1334(b), which together confer upon the bankruptcy judge acting for the district court "original but not exclusive jurisdiction of all civil proceedings *arising under* title 11 or arising or *related to* cases under title 11." (Emphasis supplied). It would be a rather ineffectual bankruptcy system that permitted a person to keep property out of a bankruptcy estate by simply saying they owned it. The bona fides of such a contention has to be determined, if it is disputed, before § 541(d) is triggered.

▮ To the extent there was controversy over rights in the property, this Court, like all federal courts, had the power to determine its own subject matter jurisdiction and in the absence of a direct appeal that determination can not be upset by collateral attack. *Stoll,* 305 U.S. at 176–77, 59 S.Ct. at 139–40; *Republic Supply,* 815 F.2d at 1053. The confirmation of the plan necessarily in-

volved a determination that the court had jurisdiction and power to affect the claims to the properties involved in the Strafford County litigation.[17] The contention that when a debtor holds only bare legal title it is subject to a duty to reconvey to the rightful owner accordingly begs the question and is not material on the issue of whether the confirmed plan has *res judicata* effect as to the Douglas Entities' claims.

▮ While all of the Douglas Entities' rights might have been resolved here, and might have had the properties conveyed to the Douglas Entities, or cut off the debtor's claim of beneficial interest, the plan simply changed that situation without any protest or objection at the time by the Douglas Entities. All that permitting the parties to pursue their claims of title in a state court meant was that they could adjudicate the issues relating to their joint venture, and other equitable claims, and perhaps determine that "but for the plan of reorganization" they would have been able to force a conveyance of title or cut off rights of the debtor. The result under the confirmed plan still would be the same, i.e., they would be relegated to monetary damages limited to the amount in escrow in the state court registry.

▮ Finally, the Douglas Entities contend that paragraph 8, page 5, of the confirmation order provides "except as otherwise provided in the plan or herein" and therefore avoids the consequence of the properties in question being revested in the reorganized debtor since the bankruptcy court "declined jurisdiction" over the Douglas litigation. The Court has dealt with the circular nature of the "declined jurisdiction" contention

---

**17.** Even if collateral attack of subject matter jurisdiction were not precluded under *Stoll* and its progeny, and even if the mere assertion by the Douglas Entities of ownership of the beneficial interest were enough to trigger § 541(d) and remove the properties from the estate, that still would not *ipso facto* remove all power of a bankruptcy court to deal with the properties in all respects. *Belisle v. Plunkett,* 877 F.2d 512, 513–15 (7th Cir.1989), *cert. denied* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); *In re Tleel,* 876 F.2d 769, n. 773 (9th Cir.1989). A debtor-in-possession under § 1107 of the Code has all the powers of a trustee in bankruptcy. These include various avoiding powers, including

the § 544(a)(3) provision cutting off claims to real property that would be cut off by a bona fide purchaser for value. *Belisle,* 877 F.2d at 513–15 (leasehold interest purchased by debtor in own name with funds of "bamboozled" partners can be brought into the bankruptcy estate notwithstanding "constructive trust" under local law); *In re Omegas Group, Inc.,* 16 F.3d 1443 (6th Cir.1994) (creditor's mere claim of entitlement to constructive trust based on debtor's alleged fraudulent prepetition acts not "equitable interest" sufficient to exclude property from property of estate). But see *Connecticut General v. Universal,* 838 F.2d 612 (1st Cir.1988) (dicta), (criticized in 16 F.3d at 1449 n. 5.)

above. Accepting that analysis, the plain language of the plan as confirmed did revest the properties in question in the reorganized debtor and there is no basis for any exception from the terms of the plan.

More specifically, the confirming order, in the paragraph cited also provides that confirmation of the plan revests properties in the reorganized debtor free and clear of all claims of creditors. The ·confirming order in paragraph 1(5), page 4, also provided for the granting of a mortgage by the reorganized debtor to support the plan provisions for unsecured creditors to include "all property owned or controlled by [the debtor] directly or indirectly, including various trusts formed and/or controlled by the Debtor" (Court Doc. No. 155). The plan itself, in Article V. E., at page 14, provides that upon confirmation "... the debtor will hold all of his then remaining assets, free and clear of all liens, encumbrances, charges, taxes and adverse claims of any kind whatsoever, except as otherwise specifically stated herein." (Court Doc. No. 109).

## CONCLUSION

■ If ever a case cried out for the application of the doctrine of *res judicata*, i.e., finality of judgments and preclusion of reopening of adjudicated matters, this is the case. If the position of the Douglas Entities were to be sustained it in effect would constitute a vacating of the confirmation order and a modification of the plan as it affects the general unsecured creditors of this estate. The procedural morass created by the numerous appeals in this case should not obscure that simple fact. There were appropriate remedies available to the Douglas Entities to force a modification of the plan or vacating of the confirming order which they did not pursue.

In terms of the general principles for *res judicata* in the "claim preclusion" sense, see *Aunyx*, 978 F.2d at 6–7, there is no question of the identity of the parties or the privies in the confirmation case and in the state court litigation. There is no question of the identi-

ty of the cause of action in both proceedings. The state court litigation involved conflicting claims to the ownership of the real properties in question. The confirmation proceeding and plan required a determination as to whether the Douglas Entities could reach the properties involved, which the plan proposed to revest in the reorganized debtor to be used as collateral to support the promised payments to the unsecured creditors. A final judgment on the merits was reached in the plan and confirming order, which cut off the claimed rights of the Douglas Entities to reach the real properties involved, and relegated them to monetary damages from the state court registry fund. To put it another way, the claim of the Douglas Entities, to the extent it asserted they could reach the properties themselves, had to be dealt with in the reorganization proceedings if a plan were to be confirmed. The plan was confirmed and no appeal was taken.

■ The essential fact in this record is that the parties "made a deal" at the final plan confirmation hearing which resulted in the Douglas Entities withdrawing their objections in consideration of certain changes being made in the plan and in the confirming order. See Transcript of hearing, July 27, 1992, pp. 2–8, 12, 15–16. If consensual plans are to be fostered, which is the underlying rationale of the present Code, settlements embodied in such plans must be enforced literally and strictly. See Transcript of hearing, June 7, 1993, pp. 44–46. The plan as it finally evolved granted considerable additional collateral to support the nonrecourse promissory note which was to serve for the payment to the general unsecured creditors.[18]

The Court had earlier indicated it had considerable doubt that the plan could be confirmed without some such real guarantee of payment, since otherwise a substantial question of "best interests" under § 1129(a)(7) of the Bankruptcy Code would likely preclude confirmation of any plan. See Transcripts of hearings, April 10, 1992, pp. 43, 47–52, 62; July 27, 1992, pp. 2, 8, 16.

---

**18.** The question as to whether the debtor should be compelled to add the additional properties was the principal focus of the Douglas Entities'

objections prior to the confirmation. See discussion, *supra*, at pages 5 and 6.

The final result was to add to the collateral to support the nonrecourse promissory note, to be held by the general creditors' representative, a number of additional real properties *including* those real properties that were the subject of the Strafford County State Court litigation between the debtor and the Douglas Entities.

As noted earlier, the plan specifically provides that the Douglas Entities will be relegated in the outcome of the state court litigation to the monetary funds in escrow in the registry of that Court. The protective order entered by this Court permits that litigation to be continued on the issues involved but enforces the plan provision that even though as of the time of the commencement of the litigation the Douglas Entities arguably could have compelled transfer of title of the properties involved their rights were modified by the confirmed reorganization plan to restrict any relief in that state court litigation to a monetary award from the escrowed funds.

I believe that this overall compromise and settlement was recognized by all parties by the time of the final confirmation hearing. It certainly was essential to the Court in determining the plan could be confirmed. In my view the series of "clarification" attempts which have been pursued by the Douglas Entities after the confirmation of the plan were, and are, transparent attempts to rewrite the plan and confirming order to their satisfaction.

 Even if I were to assume, for present purposes only, that the Douglas Entities and their representatives did not subjectively realize, for whatever reason, the effect of the explicit plan provisions and the confirming order, I still believe that *res judicata* would apply and would have preclusive effect upon the relief now requested by the Douglas Entities. The confirmation of a plan under chapter 11 creates new contractual obligations of the reorganized debtor.[19] In that context parties-in-interest are obligated to make sure that they have no problem with the literal language of the new contractual obligations and provisions dealing with the disposition of the assets of the debtor. The policy of finality surrounding bankruptcy plan confirmation orders is akin to the policy underlying an integration clause in contractual dealings, which precludes the contracting parties from going behind the written words of their contract, to rely upon pre-execution conversations and discussions.[20]

 There is also the consideration in the plan confirmation context that not only the "contracting parties" directly involved need to be bound, but so too are all other creditors and parties-in-interest affected by the debtor's estate likewise bound and have the concomitant right to insist upon their own rights established under the confirmed plan. In the present case, it is inescapable that the vested rights of the general unsecured creditors under the confirmed plan, to have adequate security to support the promised plan payments on their claims, and the claims for relief regarding the confirmed plan put forth by the Douglas Entities, cannot both be honored.

Accordingly, this Court concludes that *res judicata* does properly apply to the claims for relief asserted by the Douglas Entities, covered by the remanded orders, and that those orders should be reaffirmed on that basis as well as on all other grounds originally set forth in those orders.[21] A separate order on remand to that effect will be entered.

### ORDER ON REMAND

By virtue of orders entered by the Honorable Joseph A. DiClerico, Jr., Chief, United

19. See discussion, supra, at p. 471.

20. This policy particularly entitled the Court to assume in the present case, in view of the "tooth and nail" opposition of the Douglas Entities previously, that any further questions about language would be raised by the Douglas Entities at the final hearing before they withdrew their objections and permitted confirmation of a consensual plan.

21. While the original orders did not rely on common law *res judicata* principles, they did rely, and still do rely alternatively, on the proposition that in multi-party reorganization proceedings § 1141 of the Bankruptcy Code in effect provides "statutory preclusion" that supports the same result.

States District Judge, on October 21, 1993, and January 20, 1994 this Court remanded for reconsideration the following specific orders of this Court with regard to the possible applicability or nonapplicability of the doctrine of *res judicata,* as relating to the relief requested by appellants, Frank Douglas, Bluebird Trust, Sable Trust and Argus Trust (hereinafter the "Douglas Entities"):

1. "Order Denying Motion to Direct Application of Funds" entered April 8, 1993 in Adversary Proceeding No. 93–1025. (Court Doc. No. 13).

2. "Order on Motion for Interpretation and Clarification Re Plan of Reorganization" entered July 7, 1994, nunc pro tunc to bench ruling made June 7, 1993 (Court Document No. 256).

3. "Protective Order Limiting Further State Court Action" entered June 15, 1993 (Court Document No. 203).

After a series of hearings and briefing this Court has entered separately its Memorandum Opinion of even date setting forth its findings and conclusions with regard to the questions remanded. For the reasons indicated, which are hereby incorporated by reference, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

1. The doctrine of *res judicata* precludes the relief requested by the Douglas Entities in the motions covered by the aforesaid orders of this Court, by virtue of the terms and provisions of the confirmed plan of reorganization, as approved by an unappealed and final order of this Court.

2. Each of the aforesaid orders remanded are accordingly reaffirmed and, in view of the remand, are reentered by this Court with the aforesaid specific further finding and conclusion regarding the *res judicata* issue.

DONE and ORDERED.