**Guy THERRIEN, et al.**

**v.**

**RESOURCE FINANCIAL GROUP, INC.**

**No. C–88–128–L.**

United States District Court,
D. New Hampshire.

Jan. 18, 1989.

N.H. Legal Assistance by Ronald B. Eskin, Manchester, N.H., Peter S. Wright, Jr., Henniker, N.H., for Guy & Marie Therrien.

Sulloway, Hollis & Soden by James E. Owers, Concord, N.H., Gaston Snow & Ely Bartlett by Edward T. Robinson, Boston, Mass., for Resource Financial Group, Inc.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

LOUGHLIN, District Judge.

Plaintiffs bring this action under the Truth In Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, and the New Hampshire Consumer Protection Act, RSA 358–A. Plaintiffs are residents of Manchester, New Hampshire. Defendant is a Massachusetts corporation doing business in New Hampshire who provides consumer loans. Jurisdiction exists under 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337. Plaintiffs brought a Motion for Partial Summary Judgment and Defendant brought a counter Motion for Summary Judgment. A hearing was held December 8, 1988.

The facts of this case are undisputed. Plaintiffs received a loan from defendant. Plaintiffs signed a note for this loan on June 26, 1987, and defendant secured the note with a mortgage on plaintiffs' residence in Manchester, New Hampshire. The note indicated that plaintiffs borrowed $43,875.00 at an annual interest rate of 20.25%. The TILA disclosures provided when plaintiffs obtained the loan indicate that the amount financed, *i.e.*, the amount of credit provided for the plaintiffs, was $42,997.50.

The finance charge for the loan was $18,646.86, which represents a prepaid finance charge of $877.50 and $17,769.36 in interest. The amount financed plus the prepaid finance charge equals the face amount of the loan ($43,875.00). The annual percentage rate listed in the TILA disclosure, which is the effective interest rate, was 21.684%. The total of all payments to be made amounted to $61,644.36.

The loan was to be repaid in twenty-four monthly payments. The first twenty-three payments were each $740.39. This amount was equal to the interest due each month and did not reduce the principal shown on the face of the note. The final payment was to be a "balloon" payment of $44,615.39, equal to the face value of the note plus $740.39 interest accrued during the last payment period. As a condition of the loan, defendant required plaintiffs to remit $11,846.24 of the loan proceeds to defendant for the establishment of a "payment escrow account."

Defendant established the payment escrow account under plaintiffs' names. From this account, plaintiffs earned 5% interest per annum. The purpose of this payment escrow was to create an account from which plaintiffs' first sixteen monthly payments would be drawn. The amount placed in the escrow account equaled the amount of those first sixteen payments. Defendant explained to plaintiffs that, as a result of the prepayment escrow, they would not have to make any payments until the funds in that account were exhausted. Defendant made no disclosures to plaintiffs regarding the conditions of this account, either in the TILA disclosures or separately; nor is there any evidence that defendant provided plaintiffs with any statement accounting for the status of the payment escrow or of plaintiffs' accrued earnings from that account. There is no evidence that plaintiffs either asked for or received those earnings.

The TILA disclosure itemized the amount financed to include $60 paid for recording fees, $1004 paid to Alexander S. Buchanan for legal fees, $50 to obtain discharges, $88 to obtain title insurance, $25 to a credit bureau and other amounts paid to others.

Plaintiffs sent defendant a letter, dated December 9, 1987, by which they sought to rescind the loan agreement. Defendant received that letter on December 10, 1987. Defendant refused this request for rescission. Plaintiffs subsequently filed this action. Plaintiffs allege that defendant violated the TILA by failing to disclose the $11,846.24 payment escrow as a finance charge and in failing to adjust the annual percentage rate shown in the disclosure statement accordingly. Plaintiffs allege that defendant further violated TILA by improperly listing the $1004 in attorney fees.

Summary judgment is proper only if, viewing the record in the light most favorable to the nonmoving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Early v. Eastern Transfer*, 699 F.2d 552, 554–55 (1st Cir.), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983); *Condon v. Local 2944 United Steelworkers of America*, 683 F.2d 590, 594 (1st Cir.1982).

A dispute of fact is material if it " 'affects the outcome of the litigation', and genuine if manifested by 'substantial' evidence 'going beyond the allegations of the complaint.' " *Pignons S.A. de Mecanique de Precision v. Polaroid Corporation*, 657 F.2d 482, 486 (1st Cir.1981) (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). The moving party "bears the burden of showing that there is no genuine issue as to all the material facts necessary to entitle him to judgment." *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir.1983). Once the moving party has made the required showing, the adverse party must demonstrate the existence of a genuine issue for trial. *Id.; White v. Hearst Corporation*, 669 F.2d 14, 17 (1st Cir.1982).

A. *The Truth in Lending Act Claims*

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601. Congress authorized the Federal Reserve Board to promulgate rules and regulations to effectuate the Act. Those rules and regulations are known as "Regulation Z." 12 C.F.R. § 226.1(a). Regulation Z describes what disclosures are to be made, defines the terms to be disclosed, and prescribes the manner in which those disclosures are to be made.

Section 226.18 of Regulation Z requires lenders accurately to disclose, *inter alia*, the amount financed, an itemization of the amount financed, the finance charge, the annual percentage rate of the loan, and, under certain conditions, the fact that the annual percentage rate does not reflect the effect of a required deposit. The finance charge shown in the disclosure is considered accurate if it is not greater than $10 above or below the exact finance charge. 12 C.F.R. § 226.18(d) & n. 41. The annual percentage rate is considered

accurate if it is not more than ⅛ of 1 percent above or below the percentage rate as calculated by the method prescribed. 15 U.S.C. § 1606(c).

Regulation Z defines "finance charge" as "the cost of consumer credit as a dollar amount. It includes any charge payable ... by the consumer and imposed ... by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). The "amount financed" is the principal loan amount and any other amounts financed by the creditor less any finance charges and prepaid finance charges. 12 C.F.R. § 226.18(b). The "annual percentage rate" is defined within the TILA as that rate "which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed." 15 U.S.C. § 1606(a)(1)(A). Thus, characterizing a portion of a loan as part of the "finance charge" instead of the "amount financed" will alter not only the amount of the finance charge but the annual percentage rate as well.

■ Plaintiffs urge this court to characterize the payment escrow as a "finance charge." In doing so, plaintiffs emphasize that the payment escrow was a required condition of the loan. Alternatively, plaintiffs contend that this amount should be considered either a first payment made at the time the loan was disbursed or as multiple advances of $740.39 made at monthly intervals for sixteen months.

Countering plaintiffs' allegations, defendant has characterized the payment escrow as a "required deposit." As a required deposit, earning 5% interest, no special disclosure would be necessary and the amount of the payment escrow could be included in the amount financed. *See* 12 C.F.R. § 226.18(r) & n. 45.

The payment escrow account has not been established to be an initial payment, a series of monthly installments paid out as payments were due, or a prepaid finance charge. It was placed in a separate account and plaintiffs received 5% interest on the amount. Moreover, the funds were to be used to meet the first sixteen payment obligations of plaintiffs. Thus, because plaintiffs retained apparent title to and benefit of the funds, the funds had not been transferred to defendant as either an initial payment or a prepaid finance charge. Similarly, because plaintiffs received 5% interest, they received the entire amount in the beginning.

Plaintiffs argue that, nonetheless the escrow account is equivalent to the ways they characterize it, while allowing defendant to earn more in interest by characterizing it as part of the loan. This court is aware that defendant seemingly paid 5% interest on money it was lending out at 20.25%. However, nothing in the TILA prevents defendant from structuring the loan as it did, as long as the terms of the loan are properly disclosed.

Plaintiffs also argue that the escrow account is a finance charge, in that it was a "charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). They contend that the loan would not have been made unless plaintiffs agreed to the escrow fund, and thus it was an amount added to the true loan amount of $32,028.76 (the face value of the loan $43,875, minus the escrow account, $11,846.74) and therefore it was a finance charge and not part of the amount financed. Plaintiffs concede, however, that if the escrow account is a required deposit, then it is not a finance charge.

The problem is in defining a "required deposit." The current Regulation Z does not define "required deposit." Under prior regulations, a required deposit was "[a]ny deposit balance ... which the creditor requires the customer to make, maintain, or increase in a specified amount or proportion as a condition to the extension of credit...." 12 C.F.R. § 226.8(e)(2) (1980). Such a required deposit was required to be separately disclosed from the amount financed. *See* 12 C.F.R. § 226.8(d), (e) (1980). However, the regulations excluded from this separate disclosure, and thus included in the amount financed, a "deposit balance which will be wholly applied to-

ward satisfaction of the customer's obligation in the transaction." 12 C.F.R. § 226.8(e)(2)(ii) (1980). These definitions suggest that the payment escrow account, which plaintiffs consider a deposit balance to be wholly applied toward satisfaction of plaintiff's obligation, was a type of required deposit, or at least was an amount that did not have to be excluded from the amount financed, and therefore was not a finance charge, under the old regulations. This court does not believe that, in changing the regulations so that required deposits were included in the amount financed, the Federal Reserve Board intended to exclude from the amount financed balances that previously had been part of the amount financed.

Defendant compares the payment escrow account to a pledged account mortgage, arguing that since a pledged account mortgage can be treated as a required deposit, so can the payment escrow account. In a pledged account mortgage, as the official commentary to the regulations (the "Commentary") explains, "a consumer pledges as collateral funds that the consumer deposits in an account held by the creditor. The creditor withdraws sums from that account to supplement the consumer's periodic payments." 12 C.F.R. Part 226, Supp. I § 18(r)–2. Normally, this is done to reduce the payments the consumer otherwise would be required to make early in the loan. The pledged account mortgage is very similar to the effect of the payment escrow account. The Commentary provides that "[c]reditors may treat these pledged accounts as required deposits or they may treat them as consumer buy-downs...." *Id.*

Although the pledged account mortgage analogy would appear to allow defendant to consider the payment escrow account a required deposit, plaintiffs contend that the escrow account actually is a consumer buy-down and as such the amount placed in it is a finance charge. However, unlike the example provided in the Commentary, the payment escrow account is not a prepaid finance charge. *See id.* at § 17(c)–4. In the example, the consumer pays an amount into escrow and the creditor reduces the interest rate. The escrow account is used to "buy" a lower interest rate and represents an additional finance charge. With the payment escrow account, however, the amount is part of the regular payments. The payment escrow account went entirely to pay interest and that interest, or finance charge, is reflected in the TILA disclosure as part of the total finance charge. The payment escrow account is not a separate finance charge from that already disclosed. Therefore, treated as analogous to a pledged account mortgage, no special disclosure was necessary and the escrow account could be treated as a required deposit.

The payment escrow account does not fit neatly into the categories described in Regulation Z, but it looks most like a required deposit, when the previous regulations and the Commentary are considered. The court is not comfortable with a loan that requires consumers to borrow money at 20.25% and requires that some of the money be left in an account earning only 5%. In addition, a payment escrow account is equivalent, during the period in which the payments come from the escrow account, as far as actual payments are concerned, to repaying the amount of the escrow account initially and then capitalizing the interest due on the remainder. The difference appears after the period when the escrow account would be used to make payments. At that point, because of the escrow account, the consumer owes more than if he had made an initial payment and capitalized the interest. Hence, the escrow account allows the creditor to increase the size of the loan without risk. Nonetheless, the TILA does not require that a loan be structured most advantageously to the consumer, only that the creditor accurately disclose the terms so as to permit comparison of credit terms. *See, e.g., Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219–20, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981); 15 U.S.C. § 1601(a). Defendant has complied with the TILA in regard to the payment escrow account. The terms of the loan in that regard were accurately disclosed.

Plaintiffs also contend that defendant violated the TILA by not including attorneys fees, charged under the contract, as finance charges. Defendant listed $1004 as legal fees paid to Alexander Buchanan in the itemization of the amount financed. In fact, Buchanan was paid $600 for legal services. The remainder breaks down to $138 for title insurance, $28 for recording documents, and $24 for discharge fees, all paid to Buchanan, and $214 paid to defendant for work done by Stanley Freedman, in-house counsel to defendant, for the preparation, review and completion of closing documents. *See* Affidavit of Alexander Buchanan (attached to Defendant's Motion for Summary Judgment, doc. # 12).

The TILA disclosures also reveal additional entries of $60 for recording fees, $50 to obtain discharges, and $88 to obtain title insurance. The disbursement summary reveals that Resource Check number 2950, amounting to $1277, was used to disburse to Resource, out of plaintiffs' loan proceeds, $60 for the registry of deeds, $1004 for Alexander Buchanan, $50 to obtain discharges, $138 for title insurance (listed as $88 + $50), and $25 to a credit bureau. Defendant explains the $138 in title insurance costs as an expected $88 charge plus an additional $50 charge when plaintiffs failed to supply a plot plan. *See* Second Affidavit of Stanley S. Friedman (attached to Defendant's Opposition to Summary Judgment, Doc. # 22).

Thus, the disclosures reveal and defendant admits that plaintiff paid $1004 in legal fees, which included $138 for title insurance and $52 for recording and discharge fees. In addition, in separate entries, $88 is disclosed as paid to obtain title insurance in the TILA disclosures and $138 is listed as a separate disbursement for title insurance; also $110 is disclosed for recording and discharge fees in both the TILA disclosure and the list of disbursements as separate entries from the legal fees.

These facts reveal that plaintiffs were double-charged at least $88 for title insurance and $52 for recording and discharge fees. Considering Buchanan's affidavit, at-tached to Defendant's Motion for Summary Judgment (doc. # 12), stating that he received amounts for title insurance and recording and discharge fees, this court is unable to accept Freedman's assertion, in his second affidavit, attached to Defendant's Opposition to Summary Judgment (doc. # 22), that Buchanan's legal fees must not have included a charge for these amounts.

Regulation Z provides that bona fide and reasonable charges related to title insurance and recording and discharge fees are not part of the finance charge. *See* 12 C.F.R. § 226.4(c)(7), (e); 12 C.F.R. Part 226, Supp. I § 4(c)(7)–1. However, double charges are neither bona fide nor reasonable. Any such charges cannot be included in the amount financed and are a finance charge. Therefore, the disclosed finance charge is not accurate and is in violation of 12 C.F.R. § 226.18.

### B. *The State Law Claims*

Plaintiffs contend that the payment escrow account and excess legal fee charges were an unfair or deceptive act or practice and thereby violated the New Hampshire Consumer Protection Act, RSA 358–A. They claim that the escrow account violated RSA 358–K in that interest was charged before it was earned, thereby giving rise to a claim under RSA 358–A. In addition, they claim that the escrow account padded the size of the loan, in violation of RSA 358–A, and that the excess legal fee charges were unfair and deceptive.

The court has already ruled, *supra*, that the evidence demonstrates that the escrow account was part of the amount financed and that plaintiffs obtained the funds from the beginning. Therefore, defendant could not have charged interest before it was earned. The 5% interest earned by plaintiffs on the escrow fund demonstrates that plaintiffs had obtained the funds. The possible unfairness or deception in this conduct is a separate question.

In alleging that defendant used the payment escrow account to pad the loan, plaintiffs have alleged facts that state a

claim. In *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir.1988), the plaintiff had failed to allege a factual predicate for conduct that even came near to being unethical or unscrupulous, and therefore a violation of the Massachusetts Consumer Protection Act. *Id.* at 515–16. Here, however, plaintiffs allege that defendant structured the loan so as to increase the size of the loan without advancing additional funds to plaintiffs. This enables defendant to obtain extra profits through higher payments or a larger loan on which to foreclose. Similarly, the double-charging of title insurance and recording and discharge fees, *see supra,* enables defendant to increase its profits. Both claims allege unfair or deceptive practices.

■ Defendant contends that, even if plaintiffs state a claim, RSA 358–A is inapplicable to its lending activities, because they are "[t]rade as commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of [New Hampshire] or of the United States." RSA 358–A:3, I (an exemption to chapter 358–A).

RSA 358–A:3, I was interpreted in *Rousseau v. Eshleman,* 128 N.H. 564, 519 A.2d 243 (1986), *reconsideration denied,* 129 N.H. 306, 529 A.2d 862 (1987). There, the New Hampshire Supreme Court ruled that attorneys are exempted by RSA 358–A:3, I from the Consumer Protection Act because the professional conduct committee is "a regulatory board acting under statutory ... authority of this State." *Id.* 128 N.H. at 567, 519 A.2d at 245. The court presumed that physicians, electricians, and plumbers, all of whom are subject to licensing and regulation by some board of registration, also would be exempt. *Id.*

However, *Rousseau* cannot be intended to exclude all trade or commerce subject to licensing, especially outside the context of attorneys and similar professionals, whose individual conduct and practice is subject to a comprehensive regulatory and disciplinary framework. Otherwise, the exemption would swallow the rule and the language of the exemption, covering "transactions" which are "otherwise permitted under laws as administered by any regulatory board," would cover the entire business of industries that are subject to regulatory boards. As this court previously ruled:

> The plain meaning of the exemptive section of the Consumer Protection Act is that transactions permitted under other laws of New Hampshire or the United States will not be deemed illegal under RSA ch. 358–A. Conversely, if transactions are not permitted under other laws, either expressly or impliedly, then they are subject to regulation under the Consumer Protection Act. The goal of the legislature would seem to encompass avoidance of a direct conflict with a regulatory scheme. Under RSA ch. 358–A:3, I the issue is whether a transaction "is otherwise permitted," and not whether an agency exists to review the transaction.

*WVG v. Pacific Ins. Co.,* 707 F.Supp. 70, 72 slip op. at 4–5 (D.N.H.1986). In *WVG,* the court ruled that a cause of action exists under RSA 358–A for an insurer's unfair and deceptive practices in failing to pay an insured's claim, despite the existence of a regulatory body under RSA 417. The court noted that Massachusetts, with a similar consumer protection statute and exemption, permits such a cause of action. *Id.* at 71–73; *see Dodd v. Commercial Union Ins. Co.,* 373 Mass. 72, 365 N.E.2d 802, 804–05 (1977); *Van Dyke v. St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 448 N.E.2d 357, 360 (1983). The New Hampshire Supreme Court has acknowledged the similarity of the Massachusetts consumer protection statute and the appropriateness of looking to Massachusetts law in interpreting RSA 358–A. *See Chase v. Dorais,* 122 N.H. 600, 602, 448 A.2d 390, 391–92 (1982). Therefore, the decisions of this court and the Massachusetts Supreme Judicial Court demonstrate that regulated industries such as insurers are subject to RSA 358–A, if the particular transaction is not otherwise permitted. Defendant is licensed by the New Hampshire Banking Department, under RSA 397–A and RSA 398–A. However, defendant has not demonstrated that the specific conduct of which plaintiffs com-

plain is "permitted" under that regulatory framework. "Whether the acts here were permitted under laws as administered by the [regulatory board] within the ... exemption is initially a matter for determination at trial." *DiMarzo v. American Mutual Ins. Co.*, 389 Mass. 85, 449 N.E.2d 1189, 1197 (1983) (dealing with exemption to Massachusetts consumer protection statute for insurer). Plaintiffs' state law claims, therefore, are not precluded by a state regulatory scheme.

■ Defendant also contends that the TILA, as administered by the Federal Reserve Board, provides it with an exemption from the consumer protection statute. However, the conduct of which plaintiffs complain is not "permitted" by TILA or Regulation Z. TILA and Regulation Z specify only the required disclosures by a creditor. They do not permit or otherwise regulate the particulars of a loan agreement. Conduct that complies with the federal disclosure requirements still could constitute an unfair or deceptive practice. *Cf. Schubach v. Household Finance Corp.*, 375 Mass. 133, 376 N.E.2d 140 (1978) (compliance with state venue statute in filing debt collection actions may violate Massachusetts consumer protection statute). Furthermore, state requirements that creditors not engage in unfair or deceptive practices are not inconsistent with federal disclosure requirements. Creditors would face inconsistent requirements only if the state required different disclosures, *see* 12 C.F.R. § 226.28, but not if their practices are considered unfair or deceptive regardless of the disclosures. Therefore, the New Hampshire Consumer Protection Act applies to plaintiffs' claim.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment (doc. # 11) is granted. Defendant's Motion for Summary Judgment (doc. # 12) is denied. Plaintiffs' Motion for Leave to Reply to the Affidavit of Harvey Bock (doc. # 29) is granted.