**In re Michael D. DESROSIERS and Rose A. Desrosiers, Debtors.**

**Michael D. DESROSIERS and Rose A. Desrosiers, Plaintiffs,**

**v.**

**TRANSAMERICA FINANCIAL CORPORATION, Defendant.**

**Bankruptcy No. 96–46084–HJB. Adversary No. 97–4026.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 24, 1997.

David W. Ostrander, Northampton, MA, for Debtors.

Nicholas J. Psyhogeos, Boston, MA, for Transamerica.

Denise M. Papalardo, Chapter 13 Trustee.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination are (1) a "Motion to Dismiss" the Chapter 13 case of Michael D. and Rose A. Desrosiers (individually "Mr." and "Mrs. Desrosiers," and jointly the "Debtors") (the "Case Dismissal Motion"); (2) an "Objection to Confirmation of Debtors' Chapter 13 Plan" (the "Plan Objection"); and (3) a "Motion to Dismiss [the] Adversary Proceeding" (the "AP Dismissal Motion"), all filed by creditor and defendant Transamerica Financial Corporation ("Transamerica" or the "Defendant").

In the adversary proceeding, the Debtors seek a determination that Transamerica does not have a valid claim against them. They argue that, pursuant to the Federal Truth in Lending Act ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA"), they properly rescinded their mortgage with Aetna Finance Company, doing business as ITT Financial Services ("ITT") (Transamerica's predecessor in interest). The Debtors also request statutory damages, costs, and attorney fees. In the AP Dismissal Motion, Transamerica argues that the Debtor's claims are barred by the doctrine of res judicata. Transamerica contends that those claims were the subject of a previous case before the U.S. District Court for the District of Massachusetts that culminated in a final adjudication on the merits in Transamerica's favor.[1]

---

**1.** Transamerica based its Motion to Dismiss the Adversary Proceeding on Federal Rule of Civil Procedure 12(b)(1), made applicable here by Federal Rule of Bankruptcy Procedure 7012. Rule 12(b)(1) relates to the lack of subject matter jurisdiction. However, as detailed below, Trans-

Transamerica's Case Dismissal Motion and Plan Objection are based on the Debtors' failure to treat Transamerica's secured claim in their Chapter 13 Plan.

## I. *Facts*

The facts material to the resolution of the res judicata issue are without dispute.

In March 1986, the Debtors contacted Bentley–Royce, Inc., a Massachusetts-based loan broker, in their attempt to obtain a loan secured by a second mortgage on their residence in West Springfield, Massachusetts (the "West Springfield Property"). The broker referred the Debtors to the Money Tree, another loan broker. After the Debtors completed a loan application, a Money Tree employee drove the Debtors to ITT's Rhode Island office. ITT agreed to loan the Debtors the sum of $14,033.66, with interest payable at an annual percentage rate of 18%, and secured by a second mortgage on the West Springfield Property.

The Debtors rewrote this loan with ITT on three occasions. In April 1988, they refinanced, increasing the loan to the sum of $21,185.07, with interest payable at an annual percentage rate of 15%; in June 1989, they refinanced, increasing the loan to the sum of $38,796.72, with interest payable at an annual percentage rate of 16% interest; and on December 5, 1990, they refinanced, increasing the loan to the sum of $43,640.36, with interest payable at an annual percentage rate of 15%. Each refinancing was accompanied by a new second mortgage on the West Springfield Property.

On April 13, 1993, then-counsel for the Debtors, Edward O'Brien, sent to ITT a notice of recision of the second mortgage loan, pursuant to Mass. Gen. Laws ch. 140D, § 10 (1997). The notice, sent only on behalf of Mr. Desrosiers, alleged violations of CCCDA arid the regulations promulgated thereunder. Pursuant to the statute and applicable state regulations, Attorney O'Brien made demand, inter alia, that "ITT return and refund to [Mr. Desrosiers] all money paid by [him] to ITT in connection with the loan transaction being ... rescinded."

Mr. Desrosiers' demand was not the first of its type received by ITT. In response to earlier notices, ITT had previously filed suit in the United States District Court for the District of Rhode Island against certain of the rescinding mortgagors, seeking a declaratory judgment as to the validity of the rescission claims (the "ITT Suit"). That action was subsequently transferred to the United States District Court for the District of Massachusetts (the "District Court"), and the complaint was amended on multiple occasions to include borrowers who filed notices of rescission after the ITT Suit was commenced. After Attorney O'Brien sent the notice of rescission on behalf of Mr. Desrosiers, ITT added him to the ITT Suit as a defendant.

In February 1995, Attorney O'Brien filed a counterclaim on behalf of Mr. Desrosiers and others. The counterclaim raised counts in which it was alleged that ITT (1) violated CCCDA; (2) conspired with and induced the loan brokers to breach the fiduciary duties they owed to the borrowers; (3) committed fraud; (4) violated the Rhode Island Secondary Mortgage Loan Act, R.I. Gen. Laws 19–25.2–24 (1995) (which was repealed effective July 1, 1995, *see* 1995 R.I. Pub. Laws ch. 82, § 30); (5) collected point overcharges prohibited by Mass. Gen. Laws ch. 183, § 63; and (6) violated section 9 of Mass. Gen. Laws ch. 93A. The alleged violations of CCCDA raised

america argues only that the causes of action raised in this adversary proceeding are barred by the doctrine of res judicata. Thus, the applicable ground for dismissal is the Complaint's failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6); *see, e.g., Mullens v. United States*, 785 F.Supp. 216, 222 (D.Me.1992) (dismissing a cause of action barred by res judicata under Fed.R.Civ.P. 12(b)(6)). Further, because Transamerica relies on matters outside the pleadings, the Court must treat the motion as one for summary judgment under Federal Rule

of Bankruptcy Procedure 7056, incorporating Federal Rule of Civil Procedure 56. *See* Fed. R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). The Court notes that Rule 12(b) requires that all parties "be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56," and finds that requirement met here.

in the counterclaim related to unlawful finance charges and nondisclosure of finance charges, overcharges for filing and recording the mortgages and other documents, and inflated attorney fee charges. Attorney O'Brien also sought to have the claims of the plaintiffs-in-counterclaim consolidated as a class action against ITT. However, for reasons not relevant here, the District Court declined to certify the plaintiffs-in-counterclaim as a class. Settlement discussions then ensued.

In October, 1995, Attorney O'Brien and counsel for ITT agreed to a proposed overall settlement of the claims held by Attorney O'Brien's clients, and filed a "Stipulation of Dismissal" with respect to Attorney O'Brien's clients, excepting only Mr. Desrosiers. Mr. Desrosiers had refused to agree to the settlement, and his claims against ITT were excluded therefrom. Attorney O'Brien thereafter filed an "assented to" motion to withdraw as counsel for Mr. Desrosiers, stating therein:

> This motion is made on the grounds that counsel has advised Mr. Desrosiers to settle this case upon the same terms as dozens of co-plaintiffs'/defendants-in-counterclaim have already settled this case, the settlement being, in the opinion of counsel, fair and reasonable. It is not economically feasible for counsel to continue pressing this consolidated case against ITT ... on behalf of just one person (this Court having already denied plaintiffs' class motion).

Attorney O'Brien also requested a continuance of court proceedings relative to Mr. Desrosiers until December 1, 1995, so that if Attorney O'Brien were granted leave to withdraw, there would be time both for Mr. Desrosiers to obtain substitute counsel, and for that substitute counsel to prepare its representation. On October 10, 1995, the District Court allowed both the stipulation of dismissal and Attorney O'Brien's withdrawal motion.[2]

Mr. Desrosiers failed to obtain successor counsel by December 1, 1995, prompting ITT to file a motion to dismiss the case against him. That motion was allowed by the District Court on March 1, 1996. ITT then filed an additional motion to dismiss, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, with respect to the counterclaims asserted by Mr. Desrosiers. ITT alleged that Mr. Desrosiers had not appeared pro se and no attorney had filed an appearance on his behalf, and "ha[d] not communicated with counsel [to ITT] or the Court, ha[d] done nothing to indicate that he ha[d] any interest in prosecuting his counterclaim, and ha[d] ignored the Court's directive that substitute counsel should appear and be ready to proceed after December [1], 1995." This second motion was allowed by the District Court on March 4, 1996.

Approximately 6 months later, Mr. Desrosiers filed a motion for relief from the March 4, 1996 District Court judgment, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. On October 28, 1996, that motion was denied by the District Court. In the interim, ITT had assigned its note and mortgage to Transamerica, and Transamerica had initiated state court foreclosure proceedings.

On November 1, 1996, the Debtors filed a petition in this Court under Chapter 13 of the Bankruptcy Code. In their Chapter 13 Plan, the Debtors stated in a section entitled "Other Provisions" that they possessed a cause of action against Transamerica relating to violations of TILA and CCCDA. They further stated their intention to pursue that cause of action in ar adversary proceeding, but that if they failed to prevail, the Plan would be amended to pay the arrears owed to Transamerica. In the event that they prevailed in the cause of action and their mortgage with Transamerica was deemed rescinded, the Debtors proposed to amend their Plan to treat the claim of Transamerica as unsecured. Accordingly, the Chapter 13

---

2. Although Attorney O'Brien's motion was captioned as being "Assented to," he did not indicate who had assented to it. The implication was that Mr. Desrosiers was the assenting party, but Mr. Desrosiers and his wife indicated in a October 18, 1995 letter addressed to a District Court employee that they did not assent to the withdrawal. A copy of this letter is attached to the Debtors' Complaint, although there is no clear indication that it was ever sent to or received by the District Court.

Plan did not provide any treatment of Transamerica's claim.

Back in the District Court, Mr. Desrosiers filed a motion for reconsideration of that court's denial of his motion for relief from the March 4, 1996 judgment. The District Court denied the reconsideration motion on January 13, 1997.

On January 7, 1997, Transamerica filed its combined Case Dismissal Motion and Plan Objection. Transamerica contended that the Debtors' Plan did not comply with 11 U.S.C. § 1325(a)(3) and (a)(5),[3] largely because its secured claim was not properly treated. Transamerica further argued that, because the Debtors' income was insufficient to pay both the prepetition arrearage[4] and the mortgage payments, the proposed plan was not feasible. *See* 11 U.S.C. § 1325(a)(6).

On February 3, 1997, the Debtors, acting pro se, filed an Adversary Proceeding against Transamerica, seeking, pursuant to TILA and CCCDA, a recision of the mortgage and a recovery of the money they paid to Transamerica. In their Complaint, the Debtors alleged that ITT overcharged them for recording fees and attorney fees without listing the excessive costs as "finance charges."

On February 12, 1997, the Court conducted a hearing on the Case Dismissal Motion and the Plan Objection. Subsequently, after the AP Dismissal Motion was filed, the Court consolidated the Case Dismissal Motion and Plan Objection with the adversary proceeding and took all of the outstanding matters under advisement, extending the briefing schedule to May 1, 1997.

## II. *Positions of the Parties*

Transamerica argues that the adversary proceeding should be dismissed because any claim that the Debtors may have under TILA or CCCDA is barred by res judicata, based on the judgment against Mr. Desrosiers in the ITT Suit. Transamerica points to Federal Rule of Civil Procedure 41(b), the rule governing involuntary dismissals, which provides that a dismissal for failure to prosecute "operates as an adjudication upon the merits" unless the court specifically states otherwise. Therefore, Transamerica contends that its mortgage is immune from attack by the Debtors, and that the failure of the Debtors' proposed Chapter 13 Plan to treat its secured claim renders the Chapter 13 Plan unconfirmable and constitutes grounds for dismissal of the case.

The Debtors counter that res judicata should not apply on these facts. They remind the Court that the counterclaim in the ITT Suit was brought only on behalf of Mr. Desrosiers, and that Mrs. Desrosiers has a valid, independent right of recision under the federal and state statutes. Attached to their Opposition was an affidavit of Mrs. Desrosiers, in which she stated that she did not "subtantially [sic] control, actively participate in, or otherwise have an impact on the abrogated class action brought in the [District Court] in which my husband ... was a party.... My husband Michael handled all of the paperwork, communications and other activity connected with that case." The Debtors also argue that a case should be dismissed "with prejudice" under Fed. R.Civ.P. 41(b) "only in 'extreme situations', in which there is compelling evidence of 'willful default.'" Debtors' Opp'n at 15 (quoting 9 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2369 (2d ed.1987)). In its Reply Brief, Transamerica argues that Mrs. Desrosiers was in privity with her husband regarding the ITT Suit, and states that the dismissal under Fed.

---

**3.** Section 1325(a) lists the conditions which must be met in order for a Chapter 13 plan to be confirmed. Under subsection (a)(3), the plan must have "been proposed in good faith and not by any means forbidden by law." Under subsection (a)(5), one of three subconditions must be met with respect to each secured claim provided for in the plan: (I) the secured claim holder accepts the plan; (ii) the plan allows the secured claim holder to retain his or her lien on the property, provided that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"; or (iii) the debtor surrenders the subject property to the secured claim holder.

**4.** According to Transamerica, the Debtors owe a prepetition arrearage to the company of more than $30,000. Obj. To Confirm. of Debtors' Chapter 13 Plan and Mot. To Dismiss at 2.

R.Civ.P. 41(b) did involve violation of a court order, namely the District Court order continuing the case until December 1, 1995 so that Mr. Desrosiers could obtain successor counsel.

### III. *Analysis*

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(c); *Brzys v. Lubanski (In re Lubanski)*, 186 B.R. 160, 163–64 (Bankr.D.Mass.1995). "The burden of proof is upon the moving party in the first instance.... To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact." *Fidler v. Central Coop. Bank (In re Fidler)*, 210 B.R. 411, 418 (Bankr.D.Mass. 1997). The Court must resolve any disputed facts and inferences in favor of the party opposing summary judgment, "and must indulge all inferences favorable to that party." *Id.; see also Fleet Nat'l Bank v. H&D Entertainment, Inc.*, 96 F.3d 532, 537 (1st Cir. 1996).

### A. Relevant TILA and CCCDA Background

■ Both TILA and CCCDA were enacted "to assure a meaningful disclosure of credit terms so that ... consumer[s] w[ould] be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit, and to protect ... consumer[s] against inaccurate and unfair

credit billing and credit card practices." 15 U.S.C. § 1601(a). "TILA [and CCCDA] provide[] consumers with remedies in the forms of both a right of rescission and a right to damages." *In re Botelho*, 195 B.R. 558, 564 (Bankr.D.Mass.1996); *see* 15 U.S.C. § 1635(a) (right to rescission under TILA); 15 U.S.C. § 1640 (right to damages under TILA); Mass. Gen. Laws ch. 140D, § 10(a) (right to rescission under CCCDA); Mass. Gen. Laws ch. 140D, § 32 (right to damages under CCCDA).

■ The two statutes are substantially the same, except that TILA contains a one-year statute of limitations for a damage claim, § 1640(e), and a three-year statute of limitations for a rescission claim, § 1635(f), while the limitation period for both remedies under CCCDA is four years, Mass. Gen. Laws ch. 140D, § 10(f) (statute of limitations regarding right of rescission), Mass. Gen. Laws ch. 260, 5A (1997) (statute of limitations regarding right to damages). "Because the provisions of CCCDA parallel those of TILA, CCCDA 'should be construed in accordance with federal law.'" *Botelho*, 195 B.R. at 565 (quoting *Mayo v. Key Fin. Servs., Inc.*, No. 92–6441–D, slip op. at 3, 1994 WL 879676 (Mass.Super. June 22, 1994)); *see also* Mass. Regs.Code tit. 209, § 32.27 (1997) ("Compliance with any provisions of [TILA], the Board's Regulation Z, and the Official Staff Commentary, which does not conflict with [CCCDA], [the regulations thereunder,] or an advisory ruling of the Commissioner, shall be deemed to be in compliance with [CCCDA].").[5] Accordingly, the Court will follow the Botelho Court's lead and refer only to TILA and provisions of Regulation Z.[6]

---

5. "Regulation Z" is the name of the body of regulations enacted by the Board of Governors of the Federal Reserve System (the "Board") interpreting TILA, pursuant to authority granted them in the statute.

6. The Court notes that the Board exempted credit transactions subject to CCCDA "from chapters 2 and 4 of the Federal act," pursuant to authority granted it in 15 U.S.C. § 1633. *See* 48 Fed.Reg. 14882, 14890 (1983). Chapter 2 of the statute includes §§ 1631 through 1646. However, the Board enacted a regulation providing that "[n]o exemptions granted under this section shall extend to the civil liability provisions of section

[1640] and [1641] of the act." Regulation Z, 12 C.F.R. § 226.29(b)(1) (1997). Accordingly, a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under CCCDA. *See Botelho*, 195 B.R. at 565; *Myers v. Federal Home Loan Mortgage Co. (In re Myers)*, 175 B.R. 122, 125–26 (Bankr.D.Mass. 1994). Nevertheless, it is still appropriate to refer to the provisions of the federal statute and regulations at issue here because they do not differ from their Massachusetts counterparts in any material way.

■ The provision of Regulation Z relating to closed-end credit transactions provides in pertinent part: "In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction." 12 C.F.R. § 226.23(a)(1) (1997); *see also* 15 U.S.C. § 1635. The regulation further provides:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of the right to rescind] ..., or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, [or] upon sale of the property, whichever occurs first.

*Id.* § 226.23(a)(3) (footnote omitted); *see* § 1635(a), (f); Mass. Gen. Laws ch 140D, § 10(f) (as noted above, four year statute of limitations). The term "material disclosures" includes "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule." *Id.* § 226.23(a)(3) n. 48. Thus, if the lender does not provide the consumer with those material disclosures required by law, the consumer has three years to rescind the transaction under TILA, and four years under CCCDA.

■ The "finance charge" is defined as "the cost of consumer credit as a dollar amount" and includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a) (1997). The regulations provide that the "amount financed" equals the principal loan amount plus "any other amounts that are financed by the creditor and are not part of the finance charge ... [minus] any prepaid finance charge." 12 C.F.R. § 226.18(b) (1997). The "annual percentage rate" is the rate "which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed." 15 U.S.C. § 1606(a)(1)(A). "Thus, characterizing a portion of a loan as part of the 'finance charge' instead of the 'amount financed' will alter not only the amount of the finance charge but the annual percentage rate as well." *Therrien v. Resource Fin. Group, Inc.*, 704 F.Supp. 322, 325 (D.N.H.1989). Accordingly, the critical issue in many TILA and CCCDA actions (including this one, should it proceed) is whether or not a particular charge to a consumer was a "finance charge" and should have been but was not included in the calculation of the annual percentage rate. *See, e.g., Therrien*, 704 F.Supp. 322; *Whitley v. Rhodes Fin. Servs., Inc. (In re Whitley)*, 177 B.R. 142 (Bankr. D.Mass.1995).

Finally, Regulation Z provides that "[w]hen more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers." Regulation Z, 12 C.F.R. § 226.23(a)(4) (1997). The "Official Staff Interpretation" of Regulation Z provides the following example, after restating the regulation: "[I]f both husband and wife have the right to rescind a transaction, either spouse acting alone may exercise the right and both are bound by the rescission." 12 C.F.R. pt. 226, Supp. I (1997).

### B. Dismissals under Rule 41(b)

■ Federal Rule of Civil Procedure 41(b) provides as follows:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

The rule is plain on its face, and it is clear that an order granting a motion to dismiss under Rule 41(b) constitutes an adjudication upon the merits "both when the court expressly provides that dismissal is with prejudice and when it is silent on the matter." 9 *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 2373 (footnotes omitted); *see LeBeau v. Taco Bell,*

*Inc.,* 892 F.2d 605, 607 (7th Cir.1989) ("Because the judgment did not otherwise state, the dismissal was on the merits-with prejudice."); *see also Proctor v. Millar Elevator Serv. Co.,* 8 F.3d 824, 824–26 (D.C.Cir.1993); *Kern v. Hettinger,* 303 F.2d 333, 339–40 (2d Cir.1962). Thus, the dismissal of the ITT Suit was with prejudice.

The Debtors argue that the District Court's order allowing the motion to dismiss their counterclaims in the ITT Suit should not have preclusive effect because there was no disobedience of a court order; no prior warning of a prejudicial dismissal was given; an "unreasonable" amount of time had not passed; ITT was not prejudiced by Mr. Desrosiers' delay in acting; and judicial economy was not advanced by a prejudicial dismissal of the case. Debtors' Opp'n at 17–18. The Debtors also state:

> In this circumstance, the District Court's dismissal should be interpreted as a dismissal without prejudice. Such an interpretation is consistent with the appellate courts' view of the type of situation which justifies a dismissal with prejudice.... [W]ere the District Court's dismissal interpreted as a dismissal with prejudice, it would clearly be one which demonstrated a reversible abuse of discretion. It is very unlikely that the District Court would have intended an effect to a dismissal order which would demonstrate such an abuse of discretion.

*Id.* at 16–17. The Debtors support their contention that a dismissal of the ITT Suit on the merits would have been an abuse of discretion by citing case law from the U.S. Courts of Appeals for the First and Second Circuits, where those courts analyzed whether a dismissal with prejudice under Rule 41(b) was an abuse of the trial court's discretion. *Id.* at 17; *see Jackson v. City of New York,* 22 F.3d 71 (2d Cir.1994); *Schenck v. Bear, Stearns & Co.,* 583 F.2d 58 (2d Cir.

1978); *Richman v. General Motors Corp.,* 437 F.2d 196 (1st Cir.1971).

■ The Debtors' suggestion that this Court interpret the District Court's dismissal order as a dismissal without prejudice defies the plain meaning of Rule 41(b). The District Court's omission of a designation such as "without prejudice" is the end of the matter. There *was* a proper forum for Mr. Desrosiers to present such arguments—the United States Court of Appeals for the First Circuit. However, he failed to file a timely appeal of the District Court's dismissal order. In reality, the Debtors' arguments amount to a thinly-veiled attempt to obtain appellate-type review of the District Court's dismissal order. They have forgotten who reviews whom. The District Court's order dismissing the action before it under Rule 41(b) was with prejudice, that is, on the merits, and as no timely appeal was filed, the District Court's decision is final.

## C. Res Judicata

■ "The accepted formulation of res judicata for federal court use teaches that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Gonzalez v. Banco Central Corp.,* 27 F.3d 751, 755 (1st Cir.1994) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)).[7] As the U.S. Court of Appeals for the First Circuit has explained:

> The policy rationale behind res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." Res judicata, therefore, prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and

7. The term "res judicata" actually encompasses two separate concepts, claim preclusion and issue preclusion (which is also referred to as "collateral estoppel"). *See DiBerto v. Meadows at Madbury (In re DiBerto),* 171 B.R. 461, 470 (Bankr.D.N.H.1994); 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4402 (2d ed. 1987) ("Although the time has not yet come when courts can be forced into a

single vocabulary, substantial progress has been made toward a convention that the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'"). However, "res judicata" is commonly used to refer to only claim preclusion, *DiBerto,* 171 B.R. at 470, and the Court is using the term in that narrower sense.

attendant legal theories for recovery the first time they bring suit. *Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.*, 48 F.3d 576, 583 (1st Cir.1995) (quoting *Allen*, 449 U.S. at 94, 101 S.Ct. at 415) (citation omitted).

 "The elements of res judicata are (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Gonzalez*, 27 F.3d at 755. As established above, the first element has been met. The District Court's ruling was on the merits. *See Potts v. United Techs. Corp.*, 879 F.Supp. 1196, 1200 (N.D.Ga.1994) (where court's prior Rule 41(b) dismissal "was on the merits, the plaintiffs are barred from further prosecuting [the] action under the doctrine of res judicata"); *Dougherty v. Nynex Corp.*, 835 F.Supp. 22, 23 (D.Me.1993) (dismissal of previous lawsuit under Rule 41(b) for failure to respond to a motion to dismiss precluded litigation of claims raised therein; court noted in footnote that same result would have obtained had the dismissal been for failure to prosecute).

With respect to the identicality of the causes of action, the Court is satisfied that the claims raised in this adversary proceeding are virtually identical to those raised in Count 1 of the First Amended Counterclaim in the ITT Suit. At the February 12, 1997 hearing on Transamerica's Case Dismissal Motion, proposed special counsel for the Debtors argued that the claim relating to ITT's overcharging for attorneys' fees had not been addressed in the ITT Suit, and that the causes of action were therefore dissimilar. However, as pointed out by Transamerica, that statement proved to be inaccurate. *See* Transamerica's Memo. Sup. Mot. To Dismiss Adversary Proceeding at 13–14 (citing to sections of the "First Amended Counterclaim to Plaintiffs Fifth Amended Complaint" from the ITT Suit, and revealing that claims relating to excessive attorneys' fees were raised). However, even had such claims not been raised before the District Court, res judicata would still bar them from

being raised here because "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (emphasis added); *see also TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 938 F.Supp. 83, 84 (D.Mass.1996). The Debtors contend that the attorneys' fees-overcharge claim could *not* have been raised in the ITT Suit because that was a quasi-class action and it was unclear whether a large number of the borrowers besides the Debtors were overcharged for attorneys' fees. However, the ITT Suit was never a class action, and nothing precluded Mr. Desrosiers from raising the issue after the District Court declined to certify the class. In any event, once all of the other plaintiffs-in counterclaim were removed from the suit, there was absolutely no barrier to bringing the claim.

 The third element of res judicata is the most difficult hurdle in this analysis, but it is also overcome. Res judicata will generally bar the litigation of claims which were previously raised in a lawsuit against only those parties who participated in the original cause of action, based on "the bedrock principle that, for claim preclusion [i.e., res judicata] to apply, a litigant first must have had a full and fair opportunity to litigate his claim." *Gonzalez*, 27 F.3d at 758. However, where a nonparty has such a significant relationship with a party to the previous action that it can be said that the former is a "privy" of the latter, res judicata will apply to the nonparty as well. *Id.* at 757–58. There are two relevant types of relationships on which the First Circuit has based a finding of privity for res judicata purposes. They are where (1) the "nonparty . . . substantially controlled a party's involvement in the initial litigation," or (2) the nonparty "permitted a party to the initial litigation to function as his de facto [ (or virtual) ] representative." *Id.* at 758.[8]

---

8. There is also a third type of privity, where the nonparty is a successor in interest to a party in the previous cause of action. *See Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d

Substantial control amounts to "the availability of a significant degree of effective control in the prosecution or defense of the case-what one might term, in the vernacular, the power-whether exercised or not-to call the shots." *Id.* Thus, where "substantial control" exists, the nonparty will generally be in a position of power over the party to the litigation. *See, e.g., Kreager v. General Elec. Co.,* 497 F.2d 468, 471–72 (2d Cir.1974) (owner of a close corporation was in privity with the close corporation); *Iacaponi v. New Amsterdam Cas. Co.,* 379 F.2d 311, 312 (3d Cir.1967) (liability insurer was in privity with the insured party, where insurer had assumed insured's defense). Here, there is insufficient evidence of substantial control for summary judgment purposes. In her affidavit, Mrs. Desrosiers says that she did not exercise such control over the ITT Suit, raising a genuine issue of material fact and precluding summary judgment, if substantial control were the only test of privity. A spousal relationship alone is not determinative of substantial control.

Virtual representation, on the other hand, connotes a relationship where the parties have an identity of interests in the initial cause of action. *See Gonzalez,* 27 F.3d at 760–61. "A non-party ... is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative." *Eubanks v. Federal Deposit Ins. Corp.,* 977 F.2d 166, 170 (5th Cir.1992). However, even an alignment of interests by itself is not enough. *See, e.g., Gonzalez,* 27 F.3d at 760; *Eubanks,* 977 F.2d at 170. Determining whether the party to the first litigation was the virtual representative of a nonparty is "a weighing process that balances the nonparty's claim to a day in court against the factors that may suggest that representation has afforded a 'vicarious day in court' and that may establish the special importance of avoiding inconsistent results." 18 *Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure* § 4457.

In accordance with these principles, the First Circuit has been careful not to apply a strict definition to the term "virtual representation." *See Gonzalez,* 27 F.3d at 761 ("There is no black letter rule.... In the end, virtual representation is best understood as an equitable theory rather than as a crisp rule with sharp corners and clear factual predicates."). Yet, the *Gonzalez* court provided the following guidance:

Although the need for individualized analysis persists, a common thread binds these variegated cases together: virtual representation has a pronounced equitable dimension. Thus, *notwithstanding identity of interests, virtual representation will not serve to bar a nonparty's claim unless the nonparty has had actual or constructive notice of the earlier litigation, and the balance of the relevant equities tips in favor of preclusion.* For example, courts have applied the doctrine in situations in which a nonparty has given actual or implied consent to be bound by the results in a prior action, ... or in which certain types of familial relationships link parties and nonparties, ... or in which courts have detected tactical maneuvering designed unfairly to exploit technical nonparty status in order to obtain multiple bites of the litigatory apple.... Implicit in all these scenarios is the existence of actual or constructive notice.

We have considered, and rejected, another possible common characteristic. Some courts have suggested that adequacy of representation is also a condition precedent to nonparty preclusion grounded upon virtual representation.... Properly viewed, however, adequacy of representation is not itself a separate and inflexible requirement for engaging principles of virtual representation, although it is one of the factors that an inquiring court should weigh in attempting to balance the equities.

*Id.* at 761–62 (footnotes and citations omitted) (emphasis added).

Both of the two primary factors noted by the *Gonzalez* court, an identity of interests and notice of the initial litigation, are present here. As co-owners of the West Springfield Property and co-obligors under the notes and

252, 265 n. 13 (1st Cir.1993). Thus, there is

clearly privity between ITT and Transamerica.

mortgages with ITT, Mr. and Mrs. Desrosiers certainly had the same interests with respect to the claims in the ITT Suit. A review of the pleadings filed before the Court establishes that Mrs. Desrosiers was fully aware of the ITT Suit. *See, e.g.,* Transamerica's Reply to Debtor's Memo. In Opp'n To Mot. To Dismiss Adversary Proceeding, exhibit A (letter from both Debtors to District Court employee, stating that they received ITT's motion to dismiss that action and further stating: *"We* do not agree to this dismissel [sic], *we* did not out of hundreds involved in this case sign off or . . . accept a settlement offer from ITT. . . . *We* do intend however in the near future on proceeding with this case to prove all wrong doings by ITT. . . .") (emphasis added). Further, the Debtors have repeatedly made reference to the fact that *both of them* were involved in the ITT Suit. As noted by Transamerica:

> In the Adversary Proceeding Complaint, [the Debtors] state that [their] principal claim for rescission of the Mortgage loan pursuant to [TILA] "arose out of a class action case, which was settled or dismissed as to all parties *except the Desrosiers."* . . . Further, in their Chapter 13 Plan, Debtors state: "over approximately the past four years, the *Debtors* have been involved in litigation with Transamerica . . ., or its predecessor in interest, which holds a second mortgage on the Debtor's residence." . . . Also, in their Opposition to Transamerica's Motion to Dismiss case, Debtors state: "the litigation in the U.S. District Court cannot be explained in just a few sentence [sic], but the *Debtors* were members of a class action in which they elected to opt out of a proposed settlement."

Transamerica's Memo. Supp. Mot. To Dismiss Adversary Proceeding at 19.

Balancing the relevant equities here, the Court finds that the scale tips in favor of applying the doctrine of res judicata and dismissing the adversary proceeding. To allow this adversary proceeding to continue would be to ignore the long-standing policies behind res judicata namely, of "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). It would also encourage spouses to bring TILA and CCCDA actions in only one of their names, in order to potentially obtain a "second bite at the apple."

■ It is true that both TILA and CCCDA provide *each* spouse with a right of rescission. However, the existence of a recision right for each spouse does not justify a policy which would allow one spouse to bring an action after the other spouse had already done so and failed. And since Regulation Z provides that a recision by one spouse is binding on the other, it would be quite anomalous if the law permitted the non-party spouse to benefit from the party-spouse's success, but not share in the consequences of its failure, notwithstanding the non-party spouse's acquiescence in the recision action. *See* Regulation Z, 12 C.F.R. § 226.23(a)(4); Official Staff Interpretation, 12 C.F.R. pt. 226, Supp. I. While "concurrent property interests [generally] do not justify nonparty preclusion," where there is "general authority to represent concurrent interests," res judicata should apply. 18 *Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure* § 4461.

Accordingly, the Court holds that Mr. Desrosiers acted as Mrs. Desrosiers' virtual representative in the ITT Suit, and that the Debtors are now barred from bringing TILA and/or CCCDA claims against Transamerica. As all of the allegations raised in this adversary proceeding relate to the loan transactions between ITT and the Debtors, the AP Dismissal Motion, construed as a motion for summary judgment, must be granted.

■ Further, as the Chapter 13 plan proposed by the Debtors proposes no treatment for Transamerica's secured claim, the Court sustains Transamerica's Plan Objection, pursuant to 11 U.S.C. § 1325(a)(5). However, the Court determines that Transamerica's Case Dismissal Motion is not yet ripe for determination. Some time has passed and the Debtors income and expenses may have changed from that originally presented at the commencement of their case. Therefore, the

Court will order the Debtors to file updated schedules I and J and give them an opportunity to amend their chapter 13 plan in order to properly provide for Transamerica's claim.

### IV. .Conclusion

For the reasons stated above, Transamerica's AP Dismissal Motion is granted, and its Plan Objection is sustained. Transamerica's Case Dismissal Motion is denied without prejudice. The Debtor is ordered to file, on or before October 16, 1997, updated schedules I and J, an amended Chapter 13 plan and a motion to approve the amended Chapter 13 plan.